W. H. FOX, Respondent v. PULLMAN PALACE CAR COMPANY, Appellant.

June 24, 1884.

1. CONTRACTS — PRACTICE. — In an action to recover money held as security for the faithful performance of a special contract, the plaintiff must show full performance of the contract on his part or a waiver by the defendant.

2. —— PLEADINGS — ACTIONS. — In an action for money had and received, where the defendant sets up a special contract for the faithful performance of which the money is held, and alleges breaches thereof, and the cause is tried upon issues made as to the latter allegation, that the action was brought for money had and received is not ground for the reversal of the judgment.

APPEAL from the St. Louis Circuit Court, BARCLAY, J.
*Affirmed.*

HENRY HITCHCOCK, for the appellant:   The plaintiff can not recover on a case other than that made by the pleadings. — *Dougherty* v. *Matthews*, 35 Mo.  528; *Faulkner* v. *Faulkner*, 73 Mo. 327; *Waldheier* v. *Railroad*, 71 Mo. 514.

DAVID MURPHY, for the respondent:   The instrument set out in the defendant's answer was executed by both parties,

and the court properly refused to dismiss for failure to file it. — *Bowling* v. *Hax*, 55 Mo. 446.

Thompson, J., delivered the opinion of the court.

The petition demands the sum of $100 with interest, for " money had and received of plaintiff for the use and behoof of plaintiff." The answer denies that the defendant ever received any money of plaintiff for the use and behoof of plaintiff, except in the manner and under the conditions set forth in its counter-claim therein stated. It further avers that an agreement in writing was executed by the plaintiff, and was also executed by the defendant, by its agent thereto authorized, which agreement is in the following terms : —

" Whereas, W. H. Fox, party of the first part, has made application to Pullman's Palace Car Company, party of the second part, to be appointed and employed as conductor upon their coaches: therefore to guarantee and protect said company from any loss, by reason of any neglect, carelessness, dishonesty, dereliction of duty of any kind on his part in the course of said employment, the party of the first part has deposited with said company the sum of one hundred dollars, to be subject to and disposed of pursuant to the conditions of this agreement; and upon such deposit, and his execution of this agreement, said company have agreed to appoint him a conductor upon their coaches, and to continue him in their employment during their pleasure and no longer, and to pay him for his services, as such conductor, the compensation which they shall agree upon.

" The said party of the first part promises and agrees, well, honestly and faithfully to perform the duties of a conductor for the said Pullman's Palace Car Company, so long as he shall be continued in that employment, and to obey and fully comply with all rules and regulations now existing, as well as those which may, from time to time, be prescribed by the company for the conductors on said coaches, and that he will well and truly pay to the said company the

fare of each and every passenger who shall ride in any coach on which he shall for the time be conductor, except those only who may exhibit a legal and proper ticket or ' free pass,' signed by a proper officer of the company; and he further agrees, that if, by reason of any neglect, carelessness, dishonesty, misconduct, disobedience, unfaithfulness, incompetency, or dereliction in duty of any kind on his part, in his said employment or duty of conductor, or any default on his part to collect or return to the company the full amount of fares accruing and of right payable to them as aforesaid, or if the said company shall suffer any loss or damage, or shall not receive in full the fares of all passengers riding in the coach or coaches of which the party of the first part shall be conductor,' then the said company shall be authorized to' retain so much of the sum of one hundred dollars so deposited with them, to and for their own use, and as their liquidated damages, as may be necessary to make good any such loss or damage as aforesaid.

" And the party of the first part hereby expressly agrees that each and every such item of loss or damage, in whatsoever way the same may arise, including such as may arise by reason of the non-payment by him of fares, as above agreed, to the said company, shall be decided and adjusted by the president or superintendent of said company.

" And the said company agree, that in the case of the discharge by them, at any time, of the said party of the first part, from his said employment as conductor, or upon his resignation of such employment (without right of retention of the same, as aforesaid, on their part, under this agreement), they will repay to him, on his written application therefor to the president of the company, and on giving his receipt therefor, the said sum of one hundred dollars, with interest at the rate of seven per cent per annum from date of deposit.

" In witness whereof, said party of the first part hath hereunto subscribed his name, and the said Pullman's Pal-

ace Car Company have caused these presents to be sub-
scribed by their president, this twenty-sixth day of August,
one thousand eight hundred and eighty-one.

" Signed and delivered in the presence of
(Signed)      " W. H. Fox,                    [SEAL.]
(Signed)        " PULLMAN PALACE CAR CO., [SEAL.]
                " By L. M. JOHNSON.

" 100 Rec'd. W. A. L."

The answer further avers that plaintiff has failed to perform
the contract on his part, in that two certain sums of $14.50
and $7.00, respectively, received by plaintiff from passen-
gers on the car of which plaintiff was conductor, were not
paid over or accounted for to the defendant, as was re-
quired by the terms of the said agreement. Defendant
prays judgment on its counter-claim for the sum of $21.50.

The plaintiff's reply makes no general denial of the new
matters set up in the answer, but denies specifically that he
collected the fares, as charged, and appropriated the same
to his own use. To this is added a general denial of any
right in the defendant to recover on its counter-claim.

It thus appears, that on the face of the pleadings, it is
admitted that the contract was duly executed by both
parties, and that the only money ever received by the de-
fendant for the use of the plaintiff was that which he de-
posited with the defendant under the terms of the contract.

Upon the case as thus presented, the first question is,
whether the plaintiff can recover anything under his peti-
tion. A general rule of pleading is that the party who
seeks to enforce a right arising upon a contract must set up
in his pleadings the contract and aver performance of the
same on his part. I have not the slightest doubt that our
code of procedure, properly interpreted, exacts a rigid
adherence to this rule; for a fundamental idea of the re-
formed codes of procedure is that the pleader must apprise the
opposite party in distinct terms of his ground of action or
defence. A petition which merely alleges that the defend-

ant is indebted to the plaintiff in a given sum of "money had and received of plaintiff for the use and behoof of plaintiff," does not do this, but conceals and covers up the real cause of action, if any there be. In a recent case we held that such a statement in an action commenced before a justice of the peace, which did not show from whom, when, where or how the money was had and received, was not good.

The judges who were called upon to interpret our code of procedure while yet it was new to the profession, seemed unable to appreciate fully the spirit in which it was framed, and subjected it, in some respects, to an unfriendly interpretation, which resulted in preserving some of the abuses of the former system which the code was intended to eradicate. One of these abuses was the rule which allowed a plaintiff having a right of action arising upon a contract for the recovery of a definite sum of money, to ignore the contract which gave him the right of action and merely to set up in his declaration that the defendant was indebted to him in a given sum of "money had and received by the defendant to the plaintiff's use." But in order to make good the claim thus stated in his declaration, it was necessary for him to prove the making of the contract out of which his right of action arose, and to prove that it had been wholly performed on his part, and that nothing remained to be done in order to its complete execution beyond the payment of the sum of money demanded by him of the defendant. This rule was propagated by our supreme court, as applicable to our reformed system of pleading, in *Stout* v. *St. Louis Tribune Co.* (52 Mo. 342, 347), where it was expressed by Vories, J., in the following language: "It is very true, that where work is done or services performed under a special contract, and the plaintiff has fully performed the contract on his part and nothing remains but a duty on the part of the defendant to pay the price agreed on, the plaintiff is not in

such case bound to sue on the written contract, but may use the common counts in *assumpsit*, but still when the contract is produced on the trial, the plaintiff will be required to prove that he has performed the contract on his part, and that by virtue of the provisions of the contract, the defendant is required to pay the price agreed on ; if any fact necessary to create a liability on the part of the defendant to pay is wanting the plaintiff can not recover.'' In the case of *Mansur* v. *Botts* (80 Mo. 651), Mr. Commissioner Phillips, in giving an opinion adopted as the opinion of the supreme court, quoted the rule as thus laid down by Mr. Justice McLean in *Chesapeake, etc., Co.* v. *Knapp* (9 Pet. 541, 565): " There can be do doubt that where the special contract remains open, the plaintiff's remedy is on the contract, and he must set it forth specially in his declaration.    But if the contract has been put an end to, the action for money had and received lies to recover any payment that has been made under it.   *   *   * But if the contract remains open, the plaintiff's demand for damages arises out of it, and then he must state the special contract and the breach of it.''   Other cases were referred to in support of the same rule of pleading (*Dermott* v. *Jones*, 2 Wall. 9; *Fellows* v. *Dickinson*, 10 Mass. 292; *Knight* v. *New England, etc., Co.*, 2 Cush. 71) ; and it was held that there is nothing in the provisions of our code of practice which renders the rule inapplicable in this state, the court citing in evidence of this the ruling in *Stout* v. *St. Louis Tribune Co.* (*supra*).   The rule was reaffirmed in the later case of *Plummer* v. *Frost* (not yet reported) ; and this rule of pleading must therefore be regarded as settled in this state.

But it is a part of this rule, as declared in all the cases decided by our supreme court, above cited, that a contract when disclosed at the trial will control and limit the amount and character of the recovery, if any, and the plaintiff will be required to prove that he has fully performed it on

his part. "If any fact necessary to create a liability on the part of the defendant to pay is wanting, the plaintiff cannot recover." *Stout* v. *St. Louis Tribune Co.*, *supra.*

But so far as we know, except in the case of building contracts or other contracts to do work upon real estate, there is no rule of law in force in this state which allows a party who has a right of action arising out of a contract only, to ignore the contract, — treat it as a nullity, — and recover outside of the contract on what is termed a *quantum meruit*. The rule in regard to building contracts has been constantly denied in this state in the case of contracts for the mere rendition of personal services, as will be seen by the cases cited in the opinion just delivered in the case of *White* v. *Wright* (No. 2973, *post*) ; and the hardship of the rule in the case of building contracts has been sensibly felt, as will be seen by the observations of Hough, J., in *Haysler* v. *Owen* (61 Mo. 271, 275). We hold that it does not extend to the case before us.

It was therefore incumbent upon the plaintiff in order to make out his case, to prove that the contract had been wholly performed on his part, and that no fact necessary to create a liability on the part of the defendant to pay the sum claimed was wanting, or if any condition remained unperformed, that the defendant had *waived* performance of the same. Did he do this? The contract provided that in case of the discharge of the plaintiff from the employment of the defendant, the defendant would repay him the sum deposited with interest, " on his written application therefor to the president of the company, and on giving his receipt therefor." It does not appear that " any written application therefor " was ever made. Nor does it appear that " any application therefor" was ever made " to the president of the company." But it does not appear that a verbal application therefor was made by the plaintiff in person to the defendant's division superintendent at St.

Louis, and through his attorney, to the defendant's cashier at St. Louis.

The parties having placed this condition in their contract, we should not be at liberty to dispense with its performance upon any supposed view of its immateriality.    But it was clearly competent for the defendant to do this ; and we think it clearly appears that the defendant has waived and dispensed with the performance of this condition on the plaintiff's part.    The evidence shows that the defendant's division superintendent at St. Louis was vested by the defendant with full authority to settle and adjust this claim with the plaintiff; that this officer, both by himself and through his cashier, offered to pay to the plaintiff the deposit of $100 here sued for, less the sum of $21.50, which the defendant claimed the right to keep back, under the terms of the contract, as a " shortage," that is to say, as money which the defendant claims upon evidence furnished by its detectives, that the plaintiff had collected from passengers in the defendant's cars as the defendant's conductor, and had not accounted for.    It appears that the defendant's cashier at St. Louis had instructions to pay the plaintiff the amount of his deposit, less this alleged shortage, and requested the plaintiff to take the same and close the matter up, which the plaintiff refused to do.    After the plaintiff had thus made an oral demand upon the defendant for the amount which he now claims, and the defendant had, by announcing to him the terms on which it would settle, and by offering to pay him the amount which it held itself liable to pay, we think it would be unreasonable to allow the defendant now to say that the plaintiff shall not recover what, upon a full and fair contest, has been found to be due him, because he did not, before bringing the suit, go through the formality of demanding the sum claimed of the defendant's president in writing.    The defendant, by its conduct, has clearly recognized the oral demand of the plaintiff as a sufficient

compliance, and dispense with the contractd with the requirement of a demand in writing.

The contract, it will be perceived, makes the president or superintendent of the defendant company an umpire to adjust any claims which the company may have against the plaintiff on account of loss or damage which the company may sustain from the acts of the plaintiff while in its employ by reason of the non-payment of fares collected or otherwise. We do not feel called upon, in the state of this record, to say whether or not this clause of the contract is one which the courts would refuse to enforce : because it does not appear that the president or superintendent of the company has ever acted in virtue of the office of umpire, with which the contract invested him. It appears that the division superintendent at St. Louis has so acted ; but the circuit court held, and we hold, that the contract refers to the general superintendent of the company, and not to its local or division superintendents. This is a point where the plaintiff has a right to stand on the contract as made, and it is not to be interpreted by the practice of one of the parties to it, unknown to the other party at the time it was made. The evidence shows that the defendant has one general superintendent beside its president, and also several local superintendents, called "division superintendents," at certain great cities, of whom Mr. Wickes is the one at St. Louis. If the company had no general superintendent there would be ground for the contention that a division superintendent was meant, since the language could have no other interpretation. But the word " superintendent," in this clause of the contract, appears in connection with the word " president," separated only by the conjunction " *or*." The principle, *noscitur a sociis*, settles the meaning of the word superintendent to be the general superintendent. If any local or division superintendent had been meant, the contractor would have said so by using such an expression as

" the president or *any* superintendent," or " the president" or " *a* superintendent." The umpire appointed by the contract of the parties has therefore not acted, and the plaintiff is not bound by the decision of another umpire selected by the defendant, namely, its division superintendent at St. Louis; but he is entitled to have his right determined by a court and jury; and that has been done, upon a full contestation, resulting in a verdict and judgment in his favor.

We see no ground, consistent with decisions of tne supreme court, which are binding upon us, upon which we feel authorized to disturb this judgment. It is accordingly affirmed. All the judges concur.