JEROME B. LEGG, Respondent, v. JOSEPH GERARDI, Appellant.

St. Louis Court of Appeals, May 4, 1886.

1. PLEADING—PROOF—PRACTICE—CONTRACTS.—Under a petition which sets up the performance of services under a contract for an agreed price, and which avers the reasonable value of the services, not in excess of the contract price, the plaintiff may give evidence of the reasonable value of such services.

2. ——— The price to be paid is not such an essential element of a special contract as to render proof of the exact price essential to a recovery. A less price than that declared upon may be recovered, if it is proved.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Affirmed.*

DYER, LEE & ELLIS, for the appellant: The court below committed error in admitting testimony of witnesses as to the value of the plaintiff's services, and in instructions upon the measure of damages, because the cause of action is based upon a specific, definite contract in regard to the price to be paid for the services rendered. *Crump v. Rebstock*, 20 Mo. App. 37; *Fox v. Pullman Car Co.*, 16 Mo. App. 122; *Mansur v. Botts*, 80 Mo. 651. The court committed error in refusing the instructions asked by the defendant, to the effect that unless the plaintiff had proved the contract as stated in his petition, he was not entitled to recover. *Dougherty v. Mathews*, 35 Mo. 528; *Faulkner v. Faulkner*, 73 Mo. 327; *Waldhier v. Railroad*, 71 Mo. 514.

TAYLOR & POLLARD, for the respondent: The action was on a *quantum meruit* and the proof of value was proper. *Ludlow v. Dole*, 62 N. Y. 617; *McMahon v.*

*Bridell,* 3 Mo. App. 572; *Floerke v. Distilling Co.,* 20 Mo. App. 76.

Thompson, J., delivered the opinion of the court.

This is an action to recover the reasonable value of certain services alleged to have been rendered by the plaintiff at the special instance and request of the defendant. The petition is as follows: ·

"Plaintiff for his cause of action alleges that he is, and for years has been, an architect in said city of St. Louis, and the defendant is, and for years has been, the proprietor of the Planters' House, a well known hotel on Fourth, Chestnut, and Pine streets in said city. That on or about the —— day of April, 1880, the defendant employed plaintiff in his said professional capacity to make a survey and platting of the building then known as the Planters' House aforesaid, and to make plàns, specifications, and estimates for remodeling said hotel building, and to put the matter into a tangible shape, for the defendant to place before the board of ·directors of the company owning said hotel, to enable him (said defendant) to induce said board to remodel said building for his (defendant's) benefit, for which services said defendant agreed to pay plaintiff five per cent. of the actual cost of remodeling and improving said Planters' House, on condition such improvements were made, and to pay the same as soon as said hotel building should be remodeled and said improvements should be made.

"That, in pursuance of said employment, plaintiff made and delivered to defendant such surveys, plans, specifications, and estimates, on or about the —— day of ——, 1880, in all respects in compliance with said employment, and that afterwards, and before the beginning of this suit, said board of directors did remodel and improve said hotel at a cost of fifty-two thousand, four hundred and thirty-five dollars. That five per cent. of said sum is two thousand, six hundred and twenty-one and $\frac{75}{100}$ dollars ($2,621.75).

"Plaintiff further avers that the value of the services rendered by him as above stated in compliance with said employment, was well and truly worth said sum of two thousand six hundred and twenty-one and $\frac{75}{100}$ dollars ($2,621.75), for which, with interest and costs, he asks judgment."

The answer is a general denial.

The testimony adduced at the trial may be divided into two classes : (1) The testimony of three witnesses, the plaintiff, Alexander Kechnie, and the defendant, as to what the contract, if any, really was. (2) The testimony of experts, given against the objection of the defendant, as to what the reasonable value of the services which the plaintiff rendered was.

The plaintiff gave his version of the alleged contract in the following language :

"Gerardi said that the Planters' House was too small for his business ; that it did not contain enough rooms ; that the office was inconvenient, and that the dining-room was not such as he wanted, and that he wanted a ladies' and gentlemen's restaurant ; he went on and stated a number of things that were required in the building, and stated he wanted to have the improvements made. He did not know whether or not it was feasible to make those improvements ; he said he would like to have a couple of stories added on the building and didn't know whether the walls would bear a couple of stories or not. He also said that he wanted an office on the ground floor, and didn't know whether it was feasible or not to do that ; said he would like to have me go through the building with him and make an examination of it. Mr. Kechnie and myself went through the building with Gerardi from top to bottom and spent probably a couple of hours, it may be more, and as we passed through the building Gerardi explained to me what alterations and changes he would like and what he wished the building to contain, as altered, and after we had finished the survey or the examination of the building, we went out into

an open court, now occupied by the rotunda of the
Planters' House, and stood at the corner of the little low
boiler house that projected out into that open court, and
commenced talking, and Gerardi wanted to know what I
would charge him for making the necessary plans and
specifications and giving estimates for these proposed
improvements. He said that he wanted the owners of
the building to make the improvements for him, and if
he could get such improvements made as he wanted, he
would be willing to pay ten thousand dollars more a year
rent for the property, and he said that, in order to get
the matter in a tangible shape, so as to place it before the
owners of the building, he wanted a design so as to have
an idea of what the probable cost would be; I said to
Mr. Gerardi that the contemplated improvements would
cost, perhaps, at least, forty or fifty thousand dollars, and
that the usual fee for architects for such work would be
two and one-half per cent. on the cost for the plans and
specifications, and the usual custom was to charge two
and one-half per cent. on the cost for superintending,
making five per cent. in all; that if I made these plans
and specifications for these improvements, that it would,
perhaps, cost him a good deal more than he would like
to pay, unless he knew he was going to have the work
done. I said to Mr. Gerardi that if he was willing to
pay the amount that he had named extra for rent for the
improvements that he had suggested, I was willing to
speculate a little with him in that matter, and that I
would make a survey and the necessary drawings and
give him estimates on it, and if he succeeded in having
the owners of the property make the desired improve-
ments for him, I would charge him five per cent. of their
cost for my services; but if he failed to have them
make the improvements for him, then I would not charge
him anything for my services whatever in the matter. I
told him that it would nearly double pay me for what
my work would actually be worth, but that I can afford
to take my chances on it for the sake of getting good

pay, and that he would be out nothing unless he succeeded in having the improvements made. He said to me then, 'Mr. Legg, I will be only too glad to pay you that amount of money, if the improvements are made,' and I then said, 'Gerardi, I will proceed at once then and make the plans and give you the estimates on the building.' So I went to my office, and the next day, I took an assistant with me down to the Planters' House, and we commenced making a survey of the old building and we spent probably two or three days, I think it may be, in taking the measurements. We took the measurements all through the building so designed to be changed, on every floor, from the basement to the top." The witness then proceeds to state that he made the survey, and afterwards made a sketch showing a design for the proposed improvements, and that he afterwards made a pencil drawing of the changes that were suggested, and after some alterations growing out of suggestions made by the defendant, he finished up a pencil drawing and made a synopsis of estimates for the proposed cost of the alterations in the building.

Mr. Kechnie introduced the plaintiff to Mr. Gerardi, and was present at the time of the conversation above detailed by the plaintiff. After stating that the three went through the house together and made a preliminary examination of the alterations proposed, he proceeded as follows:

"After we got through the whole business, we got down into the rotunda part that is there now; there was no rotunda there at that time, but it was adjoining a boiler house, an engine house, I think it was at the time, and the three of us were there, and Mr. Legg told Mr. Gerardi that his charge would be for making these plans and specifications two and one-half per cent., and that if he superintended the job and made details, it would be two and one-half per cent. more, making in all five per cent., and Gerardi said that he would be only too glad to pay that amount if the work was done.

"That last conversation that we had on the day that we went through the whole place, when we were about parting, was simply this : I think I have repeated this already, but I will state again, that Mr. Legg turned to Gerardi and said, 'My charge for these specifications will be two and one-half per cent. ; if I superintend the job and make the details, it will be two and one-half per cent. more, making in all five per cent.' ; and Gerardi said, 'I will be only too glad to pay that if the work is done.'"

The defendant, in his testimony, gave a very different version of this conversation, as follows :

"I told Legg, then, as near as I can remember, that when I leased the Planters' House, it was the understanding that certain alterations and improvements were to be made on that building ; that was the understanding before I leased it, and I stated to him that the owners were now ready to take bids and go on with the work. At that time there was a contractor at work on the Planters' House, pulling out the front, and had the contract there for making the alterations on Fourth street. Legg asked me to go up stairs with him and Kechnie ; we went to the top of the building, looked around, and looked at everything, and I suppose that we were probably half an hour, or probably an hour, looking around upstairs ; then we went down in the yard of the Planters' House— the court-yard—where the rotunda is now ; and we stood there talking this matter over, and I told Legg that the Planter's House did not belong to me ; that I was the tenant, and that in case he did not get the work, I asked him whether there would be any charges, and Mr. Legg replied : 'Not a cent; no work, no pay.'"

In answer to the question whether the amount of his charges was spoken of there at that time, the witness stated :

"He said if he got that job it would be five per cent. ; I asked him the question that in case he got the work what his charges would be, and he said it would be five

per cent. for making the plans and superintending the work. I told him that I supposed the owners would be glad to pay that, because they had told me so ; they had made an allowance for that when they asked me to bring in bids ; I don't think there was· anything further .said."

The witness then went on to state that he saw Mr. Legg frequently after that time at his office, and talked. over these plans with him.

This was all of the testimony offered in the case in regard to the nature of the contract between these parties, they being the only persons present at the time when the conversation about the compensation to Mr. Legg was had.

Against the objection of the defendant, the court permitted the plaintiff to introduce several architects,. who, as experts, testified that the reasonable value of the services rendered by the plaintiff was three and one-half per cent. of the total cost of the repairs and alterations. It should be added, in this connection, that the defend. ant had first entered upon this line of inquiry in cross-examining the plaintiff, when testifying as a witness in his own behalf.

The court submitted the case to the jury on the following instructions :

"1. The court instructs the jury that if they find from the evidence that, in the year 1880, Joseph Gerardi, defendant, was the proprietor of the hotel known as the Planters' House, situated at Fourth and Chestnut streets, in the city of St. Louis ; that at said time J. B. Legg, defendant, (?) was an architect, and in his professional capacity as such, he was employed by Gerardi to make a survey and to plat the old building known as the Planters' House, and to make plans and specifications for remodeling the same, in accordance with suggestions made to him by said defendant, and also to make estimates of the cost of such remodeling ; that the defendant at the time represented to the plaintiff that he

wanted such platting, plans, and specifications, to present the matter of remodeling said Planters' House, in a tangible shape, to the board of directors of the company owning said hotel, so as to enable said defendant to induce said board to remodel said building for his (defendant's) benefit; that the defendant agreed to pay plaintiff therefor on condition that such improvements should be made; that, in pursuance of said employment, plaintiff thereafter made such survey, plans, and specifications, and estimates, in compliance with such employment, and delivered the same to the defendant; that, thereafter, and before this suit was begun, said defendant did induce said board of directors to remodel and improve said hotel at the cost of $52,434, or thereabouts, then the jury should find for the plaintiff."

"2. Unless you believe from the evidence that plaintiff has established to your satisfaction, by a preponderance of evidence, the facts stated in instruction number one, as essential to a recovery by him, in this cause, your verdict should be for defendant."

"3. The expression 'preponderance of evidence' does not refer to the number of witnesses sworn in the cause for either party. It means that the testimony in favor of the plaintiff, concerning the facts essential to his recovery herein (under the other instructions given), should, in your judgment, in view of all you have seen and heard at this trial, appear to you to preponderate in respect of its credibility in favor of plaintiff; and unless you so believe, your verdict should be for the defendant."

"4. The court instructs the jury that, if they find for the plaintiff, in assessing his damages they will determine from the evidence what was the actual cost of remodeling and improving the Planters' House, and if they believe that defendant promised to pay plaintiff a certain per cent. of such cost, as a commission for his services, they will then compute how much such per cent. on such cost is, but said cost is not to be consid-

ered, in any event, more than $52,434, and the amount so found should be assessed in favor of plaintiff and against the defendant, in your verdict in this case, *unless you should find that such sum was more than the said services of plaintiff were at the time reasonably worth*, and if you so find, then you should assess plaintiff's damages, in event you find in his favor, at the said reasonable value of said services, with interest thereon at six per cent. per annum from the time when you believe, from the evidence, demand was made by plaintiff (or his agent) of defendant for the same, and if you find no such demand was made before this action was brought, then with interest as above, from March 17, 1882, the date of service of process in this case."

These were all the instructions given in the case.

The defendant asked the following instructions, which were refused by the court:

"5. The court instructs the jury that to enable the plaintiff to recover in this action, they must find from the evidence that it preponderates in favor of the plaintiff; in other words, the jury are instructed that the burden of proof in this case is upon the plaintiff, and he must establish the contract sued upon in his petition, by a preponderance of evidence."

"6. The court instructs the jury that plaintiff can not recover in this action unless the jury find and believe from the evidence that defendant made the contract with plaintiff as set forth in plaintiff's petition."

"7. The court instructs the jury that to entitle plaintiff to recover in this action, he must have proven to the satisfaction of the jury, that the defendant agreed to pay him for the services set forth in his petition the sum of five per cent. of the actual cost of remodeling and improving the Planters' House, on the condition that said improvements were made, and at the time said improvements were completed."

"8. The court instructs the jury that plaintiff can

not recover in this action unless he has proven, to the satisfaction of the jury, that the defendant made the contract with plaintiff, which is set forth in plaintiff's petition, and unless you believe from the evidence that said contract was made, your verdict should be for the defendant."

The jury returned the following verdict (the style of the case being here omitted):

"We, the jury, in the above entitled cause, find verdict for plaintiff and assess the damages at three and one-half per cent. on $52,434, amounting to $1,835.19 (Eighteen hundred, Thirty-five $\frac{19}{100}$ Dollars), and interest at six per cent. from March 17, 1882, to date, same being $410.77, amounting in all to $2,245.96 (Two Thousand, Two Hundred and Forty-five $\frac{96}{100}$ Dollars.)

"St. Louis, Dec. 10, 1885.

"E. Anson More,
"Foreman."

I. The first error assigned is, that the court erred in admitting evidence of the reasonable value of the plaintiff's services. It is plain that this objection is not well taken. The petition is somewhat peculiar. It states a contract between the plaintiff and the defendant for the rendition of the services by the plaintiff at an agreed price. It alleges performance of the contract by the plaintiff. It then states the amount due the plaintiff under the contract. It then avers that this amount was the reasonable value of the services, and concludes by asking judgment for the same. Under the rule that doubtful averments in a pleading are to be interpreted most strongly against the pleader, the court was right in interpreting this petition to mean that, although the plaintiff had rendered certain services for the defendant, at an agreed price, yet, as he was willing to put in issue the question whether such agreed price was the reasonable value of the services, and, if it was not, to recover only such reasonable value, it became material to inquire what

such reasonable value was. In other words, he stated a right of recovery upon the contract, but he waived the right to judgment according to the terms of the contract and consented to take such *less* sum as upon evidence it might be found that his services were reasonably worth. In this interpretation of the petition there was certainly nothing of which the defendant can complain. We can not see anything in the whole argument, made on behalf of the defendant, except this: That the court in some way wronged the defendant by letting the plaintiff waive what, according to his version of the contract, he was entitled to, and to take less. This is wholly unlike the case where the party suing on a contract fails to make good his allegation that the contract was performed; in which case, according to the general rule which has been acted upon in this state (subject to exceptions), he is not allowed to recover a *quantum meruit*. Nor have the cases cited on behalf of the defendant (*Mansur v. Botts*, 80 Mo. 651 ; *Fox v. Pullman Palace Car Company*, 16 Mo. App. 122, and *Crump v. Rebstock*, 20 Mo. App. 37), any application to this case. Those cases hold that, although there may have been a special contract, yet, if it has been fully performed and nothing remains to be done, except for the defendant to pay, and the plaintiff to receive, the balance due for such performance, according to its terms, the plaintiff, without averring the contract and its performance, may recover the same on allegations similar to the common counts in *indebitatus assumpsit*. But here the plaintiff has set out the contract, averred performance ; and now it is alleged that he had no right to show that his services were worth less than the price agreed upon, he being willing to take only what they were worth. We, therefore, think that the court committed no error of which the defendant can complain in admitting evidence as to the reasonable value of the services.

II.   For the same reason, the court manifestly committed no error in confining the jury to the reasonable value of the services in the instructions given.

III.   Error is assigned upon the refusal of the court to give the instructions requested by the defendant. The first of these instructions was covered by instructions which the court gave.   The other three embodied the idea that the plaintiff, in order to recover, was bound to prove the contract *as fully* as he had stated it in his petition.   This, we take it, is not a sound position.   The plaintiff, in order to recover under the allegations of his petition, was bound to prove no more than this :   (1) A request by the defendant to him to perform the services. (2) The performance by him of the services in compliance with the request.   (3) The reasonable value of the services.   (4) The happening of the event upon which the plaintiff's compensation was dependent.   The price paid for services is not such an essential element of a special contract as to make a recovery dependent upon proof of the exact price.   If the plaintiff proves the contract in other respects, but proves a less price than the stipulated price declared upon, will it be claimed that he can recover nothing ?   It might be claimed with equal reason that if he proves a greater price he can recover nothing ; because it is not apparent why, in the latter event, the identity of the contract is not as much affected by the variance as in the former.   On the contrary, the rule is that where a special request to perform services is shown, it is not necessary to prove an agreement to pay any fixed sum for the services in order to a recovery, because the law implies an agreement to pay a reasonable value.   Of course, if a special agreement as to the price is alleged, that limits the amount of the recovery, and no recovery of a reasonable value can be had in excess of such contract price.   But where, as in this case, a reasonable value not in excess of the alleged contract price is claimed, it is not necessary to prove an agreement to

pay the alleged price in order to the recovery of such reasonable value, and so much of the petition as alleges an agreement to pay a fixed price may, if necessary, be regarded as surplusage.   The cases cited on behalf of the defendant, in support of their contention on this branch of the case (*Dougherty v. Matthews*, 35 Mo. 520 ; *Waldhier v. Railroad*, 71 Mo. 514, and *Faulkner v. Faulkner*, 73 Mo. 327), have no application.   They merely hold that the plaintiff can not set up one cause of action in his petition and recover upon evidence tending to prove a different cause of action.   No attempt to do this has been made in this case.   The evidence of reasonable value is conformable to the claim of reasonable value made in the petition.

The instructions upon which the court put the case to the jury were well and carefully drawn.   The case seems to have been fairly and properly tried throughout, and the judgment must be affirmed.   It is so ordered. All the judges concur.