BEAGLES, Plaintiff in Error, v. ROBERTSON, De-
fendant in Error.

St. Louis Court of Appeals, January 26, 1909.

1. **ATTORNEYS: Contingent Fee: Attorney's Lien.** Under the
Laws of 1901, page 46 (Annotated Statutes of Missouri 1906,
section 4937-2), an attorney, either before or after suit is
brought, may contract with his client for a certain percentage
of the proceeds of the client's suit or settlement of it, and
such statute gives the attorney a lien on the proceeds realized
from the judgment or settlement, on notice to the adverse
party.

2. ———: ———: **Right to Compromise.** Where an attorney
has a contract for a percentage of the proceeds of the suit or
settlement of the same, a stipulation in such contract that the
client. would make no compromise unless the attorney con-
sented to it, is not void as against public policy, in the ab-
sence of any facts tending to impeach the good faith of the
attorney making such contract.

3. ———: **Trust Relations: Duty to Client.** While bargains
between attorneys and clients, where property of the client is
acquired by the attorney by gift or purchase, are jealously
watched, and usually the burden is on the attorney to show the
good faith of such transaction, nevertheless an attorney, under
our statutes, may make a contract for a percentage of the fruits
of his litigation and in a subsequent action upon said con-
tract the burden is not on the attorney to show that it was
entered into in good faith.

4. ———: **Unauthorized Act of Attorney: Consent: Ratifica-
tion.** Where an attorney compromised a case without his
client's consent and contrary to his client's instruction and
the client took no steps to have the decree rendered pursuant
to the compromise set aside, but after waiting two years with
full knowledge of all the facts, sued the attorney for a bal-
ance which he claimed the attorney owed him as the proceeds
of the settlement, he thereby ratified the settlement so that
he could not afterwards claim that it was without authority.

5. ———: ———: ———: **Compensation to Attorney.**
Where a client claimed that his attorney had made a settle-
ment of a suit in which he was engaged, without authority,
but afterwards by his act ratified the settlement and sought to
avail himself of the fruits of it, he could not escape liability to
the attorney for compensation for his services on the ground
that the settlement was made without the authority of the
client.

Error to Audrain Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

AFFIRMED.

*E. A. Shannon* and *Clarence A. Barnes* for plaintiff in error.

(1) The burden of proving fairness and honesty of transactions between an attorney and his client is on the attorney. Barrett v. Ball, 101 Mo. App. 288; French v. Cunningham, 149 Ind. 637, 49 N. E. 797; Bingham v. Saline, 3 Am. St. 152; Darlington's Estate, 30 Am. St. 776; Elmore v. Johnson, 36 Am. St. 401; Cossem v. Herestis, 94 Am. St. 160; Lawson on Contracts (2 Ed.), pages 313, 314 and 318; 3 Am. and Eng. Ency. Law (2 Ed.), p. 333; 2 Clark & Skyles on Agency, p. 1483, sec. 675; Bumham v. Heselton, 82 Me. 495, 20 Atl. 80; Yeamans v. James, 27 Kan. 195; Carter v. West, 93 Ky. 211, 19 S. W. 592; Wilson v. Cautrell, 18 S. E. 517. (2) Agreement between attorney and client, while the relation continues, by which the former secures a gift or a larger compensation than was stipulated for when he undertook the business, is invalid, and its enforcement will be restrained. Lecatt v. Sallee, 29 Am. Dec. 249. (3) An action for money had and received will lie against an attorney, who, having a debt for collection, receives in payment debts on himself, or on others, without authority from his principal. Houx v. Russell, 10 Mo. 247. When one becomes possessed of money which does not in equity belong to him and he cannot in good faith withhold it from others beneficially interested in it, there is a constructive trust and an action for money had and received will lie. Harrison v. Murphy, 106 Mo. App. 473; 3 Pomeroy, Equity Jurisprudence (3 Ed.), p. 2013, sec. 1047; Stern & Bros. Co. v. Wing, 97 N. W. 792. (4) The contract as pleaded by defendant was void, because it deprived plaintiff of a free and unrestricted right to compromise his suit

against Locke & Atkinson, which was then pending, it being against public policy. Davis v. Webber, 66 Ark. 190, 74 Am. St. Rep. 86, 45 L. R. A. (1st Series) 196; Ellwood v. Wilson, 21 Iowa 523; Lewis v. Lewis, 15 Ohio 715; Railway v. Ackley, 171 Ill. 100; Huber v. Johnson, 68 Minn. 74, 70 N. W. 806, 64 Am. St. 456. (5)   The appellate court of New York, the highest court of that State, has passed upon two of the propositions with which this court is confronted namely:   First, that a provision in the contract between attorney and client for a contingent fee that the client should not make a bona fide settlement without the attorney's consent was contrary to public policy and invalid, and second, such a provision is inseparable from the rest of the contract and that the contract in its entirety must fall.   Snyder v. Telegraph Co., 190 N. Y. 66, 82 N. E. 745.   (6)   To the same effect as the cases cited, supra, · is the decision of the Supreme Court of Minnesota in Gammon v. Johnson, 69 Minn. 488, 72 N. W. 563, which holds that when a party entered into a contract with an attorney to collect by suit or settlement a claim and agreed not to settle such claim with the defendant without the consent in writing of the attorney, and that if he did so settle that he would within ten days thereafter pay the attorney fifty dollars as full compensation in such case for any services preformed by said attorney in the matter that said contract was void as against public policy and that said stipulation was an inseparable part of said contract and the contract in its entirety must fall.   Another authority directly in point is Davis v. Chase, 159 Ind. 242, 95 Am. St. 294.   Other decisions holding similar contracts to the one in suit void as against public policy are Railway v. Service, 94 Pac. 262; Boardman v. Thompson, 25 Iowa 487; Weller v. Railroad Co., 68 N. J. Eq. 659, 61 Atl. 459; Key v. Vattier, 1 Ohio 132.

*J. McD. Trimble* and *Fry & Rodgers* for respondent.

The contract of employment fixing the basis of defendant's fees for his professional services, although made after the suit was instituted and whilst it was still pending, was and is lawful in Missouri by virtue of a legislative act. Laws of Mo. 1901, p. 46. In an action against an attorney to recover money collected by him in a suit in favor of his client, the plaintiff has the burden of showing upon all the evidence his right to recover, and the attorney is not required to prove anything until the plaintiff makes out a prima facie case against him by proof. 2 Encyclopedia of Evidence, pp. 151, 152 and authorities there cited.

STATEMENT.—This is an action instituted against the defendant for money had and received for the use of plaintiff; the sum being laid at $1,250. Defendant is charged with receiving said sum of money for the use of plaintiff December 13, 1903, and after so charging, the petition states the circumstances under which the money was received. From the averments of the petition, the answer and the reply, it appears defendant, who is an attorney at law in the city of Mexico, was the attorney of plaintiff in an action instituted against William T. Atkinson and E. R. Locke, to the January term, 1903. The case was reset for trial February 12, 1903, and on said day the trial was begun and continued to the following day when the litigation was compromised. The petition charges defendant, while acting as the professional and confidential adviser of plaintiff, in order to obtain more compensation for his services as attorney than they reasonably were worth, without authority from plaintiff, and without his knowledge or consent, compromised and settled the suit and caused a decree to be entered therein against plaintiff's interest and rights. The petition charges further that Robertson in the settlement "received for plaintiff,

by virtue of being his attorney, a check from Mrs. Grace Beagles for the sum of one thousand, two hundred dollars, said check being executed and signed by Locke and Atkinson, the defendants in the aforesaid suit; which check was duly paid to the said George Robertson and the said George Robertson received and accepted and retained said sum so paid, knowing the same rightfully belonged to plaintiff; and all done unknown to plaintiff." It is further charged that plaintiff learned of these facts in March, 1903, and demanded payment of the sum received by defendant and defendant refused to pay it. The answer admits defendant represented plaintiff in the suit against Atkinson and Locke; admits the setting of the case for trial; the beginning of the trial February 12th; its continuance into the next day, and that on said second day the case was settled and compromised; avers the settlement was made with the knowledge and consent of plaintiff and was then approved and has been subsequently approved by him; admits also the reception and cashing by defendant of the check of Atkinson and Locke for $1,250; but avers this money was paid to him according to the terms of said settlement and compromise on account of and in satisfaction of defendant's fees for professional services to plaintiff. After denying the other allegations of the petition, the answer sets up the facts pertaining to the controversy and states them as follows: In the year 1900 plaintiff was interested in about eight hundred acres of land in Audrain county, some of which he owned in fee simple and in the remainder he had a life estate. Said lands were sold under execution for the payment of a debt plaintiff owed the Southern Bank of Mexico, and at the sale were bought in by the bank at a nominal price, the title being taken in the name of H. A. Ricketts. Afterwards Ricketts conveyed the lands to Atkinson, to whom plaintiff was also indebted and Atkinson and plaintiff in December, 1900, entered into a contract to the effect that when plaintiff should

pay Atkinson, within a given time, what he owed him, the latter would convey the land to plaintiff. Afterwards Atkinson sold an interest in the lands to E. R. Locke, and affairs were in this posture when defendant was employed by plaintiff to institute suit against Atkinson and Locke for the recovery of the lands, plaintiff claiming the indebtedness to Atkinson had been paid and he was entitled to a reconveyance. The answer states also that prior to this employment, plaintiff had employed defendant as attorney in two other suits in the circuit court of Audrain county; one being a suit by plaintiff to have a judgment in favor of his wife for alimony and support modified in a material respect, and the other a suit by plaintiff and his wife to recover possession of a lot in the city of Mexico. The answer further avers plaintiff and defendant entered into a written contract regarding defendant's compensation as plaintiff's attorney. This contract is set out in full in the answer. It recites the employment of defendant as plaintiff's attorney in the suit to be brought against Atkinson and Locke and also in the other two suits, and then proceeds as follows:

"Now it is agreed that the said George Robertson will, in his capacity as attorney, conduct the case against the said Atkinson and Locke to the end of the litigation, subject to the right of the said Beagles to compromise the same should a suitable compromise be offered.

"And for his services the said George Robertson shall have one-fourth of whatever is gained by said Beagles in the said suit against the said Atkinson and Locke; he is to have one-fourth of whatever judgment, if any be entered, for rents and profits, or for the use of said premises, and a one-fourth interest in the lands against (gained?) or any interest therein, and if this suit is compromised before the trial in the circuit court, then the said Robertson is to still have one-fourth so gained, and if an appeal is taken to any appellate court

in said·action, then the said Robertson is to have one-third of the amount of whatever may be gained after said appeal is taken, either by compromise or suit, and said George Robertson is hereby employed to look after all collateral matters connected with said action against said Atkinson and Locke and continue in said matter, whatever form it may assume, to the end of the litigation.

"And it is further agreed that for his services he shall have a lien upon the amount so gained and particular reference is hereby made to the petition filed in said cause for a particular description of the lands in litigation, and it is further agreed that said Robertson will keep an account of all services performed for the said Beagles in the other two cases and any other business done for said Beagles outside of the litigation with Atkinson and Locke, for which he shall be paid a reasonable fee for his services.

"And a lien in addition is hereby created upon the result gained in the case against Atkinson and Locke for the other services rendered and to be rendered, which shall be a lien the same as for his services in the case against Atkinson and Locke.

"And it is further agreed that if sufficient is not realized out of the case against Atkinson and Locke to pay the said Robertson for his other services, then the said Beagles does hereby create a lien upon two life insurance policies upon the lives of two of his sons, payable in 1904, to pay the said Roberston for his other service herein provided for.

"And the said Beagles does hereby assign, set over and quitclaim to the said Robertson an interest in the property in litigation between him and the said Atkinson and Locke to secure the performance of this contract, and doth further agree that he will accept no compromise in said matter not agreeable to the said Robertson.

And this is binding upon the executors, administrators, heirs and assigns of the said James M. Beagles."

On February 9, 1903, the contract was modified as follows:

"The foregoing contract is so modified and changed that if the said E. R. Locke, or the interest of said E. R. Locke, in said lands shall escape judgment in favor of plaintiff, on account of Locke being an innocent purchaser, or on account of any other reason, and if judgment is entered against Atkinson in lieu of the lands and interest transferred to Locke, and if the allowance is made against Atkinson for the interest transferred to Locke by him, then said Robertson shall have one-fourth interest in whatever judgment or lien there may be against Atkinson in lieu of the land and interest transferred by him to Locke, and one-third if there be an appeal taken as in the original contract provided."

After reciting the contract and its modification, the answer states the services rendered by Robertson as attorney in the several suits, and avers his services in the two suits other than the one against Atkinson and Locke, were of the reasonable value of $100. It then states the terms of the compromise in the suit against Atkinson and Locke entered into February 13, 1903. These terms, according to the answer, were that all debts due from plaintiff to Atkinson and Locke should be canceled and treated as paid; that Grace Beagles, a daughter-in-law of plaintiff, should take title to the lands from Atkinson and Locke, and should provide for and secure to plaintiff the payment to him annually, on December first of each year after the date of the settlement and during the remainder of his natural life, $1.50 per acre on 460 acres of land; in other words, $690 per annum as long as plaintiff might live; the payment to defendant for his services in said suit, which, in order to induce a settlement, defendant reduced to $1,250, when if he had stood on his contract he would have been entitled to more. The answer says the com-

promise agreement was fully carried out according to its terms, all indebtedness from plaintiff to Atkinson and Locke canceled, the land conveyed to Grace Beagles, defendant paid $1,250 for his services in the suit "by Grace Beagles with a check from Atkinson and Locke," and that the payment of $690 each year for the use of plaintiff during his lifetime was provided for and secured. The answer further states that in order to guard against plaintiff's improvidence and prevent him from pledging his annuity in advance, and placing it where future creditors would have no right to look to it for his debts, the promise to pay said sum each year during the life of plaintiff was made to and in the name of John Beagles, plaintiff's son with the knowledge and consent of plaintiff, and John Beagles was to collect the money and pay it to plaintiff. It was further alleged that plaintiff not only knew of and consented to said compromise when made, but accepted from John Beagles thereafter two payments of $690 each, prior to the institution of this suit; wherefore it is said "plaintiff is estopped to disaffirm or set aside the same or any part thereof by means of this suit or otherwise." The answer next states the value to plaintiff of the compromise. It is averred he was seventy-three years old at the time it was made and the cash value of all the sums paid for his use under the settlement considering the value of the use of money at six per cent per annum, was $4,123.40; and further, if the $1,250 paid to defendant as a fee was treated as part of the benefit to plaintiff, then the cash value of what plaintiff received as the fruits of said suit against Atkinson and Locke, was $5,373.40. Plaintiff's expectancy of life was put at seven and one-tenth years. It is alleged that under the contract of employment between plaintiff and defendant, defendant was to receive one-fourth of said sum recovered from Atkinson and Locke, to-wit: $1,343.35 and $100 more in the other two suits, or $1,443.35 in all. In conclusion the answer says de-

fendant received from Grace Beagles $1,250, applied it
in satisfaction of the fees due him for professional ser-
vices and has treated it as in full satisfaction; but prays
if he is not permitted to retain said sum in payment of
his fees, that the court will enforce the specific per-
formance of the contract between plaintiff and de-
fendant by crediting defendant with $1,250 and render-
ing judgment in favor of defendant for $193.35. To this
answer a long reply was filed, consisting of much vitu-
perative matter and charges of bad faith against de-
fendant, which will be stated only to the extent they
are interwoven with substantial averments. The reply
admits the employment of defendant by plaintiff in the
three suits; avers defendant never rendered a statement
to plaintiff of his services in the two suits other than
the Atkinson and Locke suit and that the services ac-
tually rendered in said other suits were not worth
more than twenty-five dollars. It is alleged plaintiff
had no knowledge of the efforts to compromise the suit
with Atkinson and Locke; that while the confidential
adviser of plaintiff Robertson connived with plaintiff's
children to obtain the value of plaintiff's interest in
the lands held by Atkinson and Locke and neither Rob-
ertson nor the children told plaintiff of offers made by
Atkinson and Locke to compromise; nor did plaintiff
know of them until after the settlement of the suit in
controversy by Robertson; that after an offer of compro-
mise had been made, and without communicating it to
plaintiff, Robertson advised plaintiff not to compromise
and plaintiff acted under this advice and also told Rob-
ertson not to compromise; that in order to control the
disposition of the suit with Atkinson and Locke, Rob-
ertson "forced and obtained from plaintiff" the con-
tract for fees set up in defendant's answer; that the
compromise and settlement of said suit were effected by
Robertson and plaintiff's children unknown to plain-
tiff, whereby a decree was entered divesting plaintiff
of all his right, title and interest in his land and cast-

ing the costs on him; and at the same time a secret contract was entered into whereby it was agreed John Beagles, plaintiff's son, should receive in December of each year thereafter, as long as plaintiff should live, the sum of $690, but by the terms of the compromise plaintiff got nothing; that the $1,250 which Robertson secretly obtained was not mentioned in the written agreement, decree or settlement aforesaid. The reply further stated plaintiff never received the annuity for seven and one-tenth years, and his expectancy of life was not that long, as the answer charged it to be. As to the manner of procuring the contract between defendant and plaintiff, the reply says defendant, knowing plaintiff's age and failure of business acumen, and his desire for a speedy trial of the cause against Atkinson and Locke, waited until fourteen days before the trial and then compelled plaintiff to sign the contract by threatening to withdraw from the suit, knowing it was too late for plaintiff to engage other counsel before the case would be called for trial, and that plaintiff was compelled to sign said contract and thereby convey to Robertson an interest in the land, and give him complete control of the case and prevent plaintiff from compromising and settling it. It is further charged that only three days before it came on for trial, defendant forced plaintiff to a modification of the contract, whereby defendant gained an exorbitant interest in plaintiff's rights, and obtained full control of the case, preventing plaintiff from settling it, or any other person but Robertson and plaintiff's children in collusion with him. Wherefore it is averred the contract between plaintiff and defendant, and the amendment thereto, are against public policy and null and void, were obtained by unfair means and are not binding on plaintiff. The relief prayed in the petition was judgment for $1,250 and costs.

At the trial plaintiff introduced in evidence the check for $1,250 payable to defendant as attorney and

signed by Atkinson and Locke. E. R. Locke testified to the terms of the settlement of the litigation by Beagles against him and Atkinson; testified the check was given to Robertson at the time of the settlement; that Mrs. Grace Beagles gave Atkinson and Locke her note for $1,250 and Locke wrote a check and handed it to Robertson; that everybody connected with the case understood it was paid to Robertson for his fees, but James Beagles was not present and the witness never had an interview with him regarding the matter. Plaintiff testified Robertson never paid him any money received from Atkinson and Locke; Robertson told him on the day of the settlement he (Robertson) received $1,250; did not say it was his fee; Robertson was to get a per cent of what he gained in the case, but plaintiff did not understand he was to be paid his fee as part of the settlement; wanted Robertson to make out his account; if Robertson had carried on the suit as he should have done, he would have received a per cent of what he gained. The witness testified he supposed Robertson got his fee out of the check, but said again he did not suppose anything about it; did not know; Robertson referred witness to the latter's son for the particulars of the settlement. The witness denied he gave any one authority to compromise the case and said he never had told Robertson that John Beagles, plaintiff's son, was acting as agent for a compromise. He said further Robertson had advised him to make no compromise and plaintiff said he told Robertson he (plaintiff) had no compromise to make. This was before the trial came on. Plaintiff said he was not consulted in any way about the compromise and was not present when the articles of settlement were drawn. Some evidence was introduced tending to show plaintiff had become a bankrupt and in his schedule of assets had included no demand against Robertson. The foregoing is the substance of all the evidence offered by plaintiff and at the conclusion of it the court ordered the jury to re-

turn a verdict for defendant, from which order this appeal was prosecuted.

GOODE, J. (after stating the facts).—We have stated fully the substance of the pleadings in this case because, as it went off on a demurrer to plaintiff's evidence, in order to determine whether or not a prima facie case was established on the issues of fact between the parties, it is essential to know on what facts issues were joined and what were either admitted or stated alike by both parties. Both alleged the money in controversy came into defendant's hands in his capacity of attorney for plaintiff in certain litigation. The petition charges a breach of defendant's duty as attorney, in that he compromised the litigation without the knowledge or authority of plaintiff and caused a decree to be entered against plaintiff's interest and right. It further states that as part of the settlement, defendant received a check for $1,250 for plaintiff, on which defendant collected the money and retained it, though the same rightfully belonged to plaintiff. The petition may be regarded as denying defendant's right to retain the money for two reasons; because it was paid to him for plaintiff and in equity and good conscience, belongs to the latter; and because, further, whatever lien on the money for his fees or right to retain the whole in payment of his fees, defendant otherwise might have possessed, does not exist because of his breach of duty as attorney; in other words, his failure to comply with his implied contract with plaintiff to attend faithfully to the latter's interest. The contract of employment between the parties was not disclosed in the petition, but was copied in the answer, and the effect of the answer is that under its terms defendant was entitled to retain the sum in controversy for his compensation, not only in the case referred to in the petition against Locke and Atkinson, but also in two other cases mentioned in the contract. As to

the compromise of the Locke and Atkinson case, which the petition charges was done without authority from plaintiff, the answer pleads both that plaintiff knew of and consented to the compromise at the time it was made, and had received certain proceeds from it since, to-wit: two annuities. That is to say, the answer pleads both original authority to defendant to enter into the compromise and ratification of it after it was made. Facts are stated in the answer going to show the value of what plaintiff received under the compromise settlement amounted to $5,373.40, and that hence the $1,-250 retained by defendant was less than one-fourth of the former sum and within the amount the contract of employment authorized him to retain. Many allegations of an abusive character are made against defendant in the reply; but as far as his right to enter into the compromise or settlement is concerned, these averments do not go beyond those of the petition. The replication, though it states the details more fully than does the petition, like the latter pleading, charges the compromise was made without authority from plaintiff and in fraud of his rights. As to the contract between plaintiff and defendant employing the latter as attorney, the reply states facts intended to nullify it; perhaps on the ground that its execution by plaintiff was induced by duress on the part of defendant, and certainly on the ground that it was obtained by. fraud, and abuse of the confidential relationship of attorney and client. The replication also asserts said contract was void because it prohibited plaintiff from settling the litigation if he desired, without the consent of Robertson. Thus, it will be seen defendant founds his claim of right to retain the money in his hands as a fee, on the contract between him and plaintiff, and plaintiff attacks this right on the ground that the contract was procured (a) by duress, (b) by fraud, (c) that it was void as against public policy, and (e) that it was breached by defendant in compromising the suit against Atkinson and Locke

without authority from plaintiff and in fraud of plaintiff's rights. As to the other cases besides the one against Atkinson and Locke, the replication says plaintiff had not earned over twenty-five dollars in them. Hence the conclusion to be drawn from the entire replication is this: defendant is entitled to no fee in the Atkinson and Locke cases and only twenty-five dollars in the other cases.

If the contract between plaintiff and defendant was properly entered into it was not illegal, but on the contrary was expressly authorized by a statute of the State. This statute says, in effect, that in all suits in equity and actions at law, it shall be lawful for an attorney, either before or after a suit is brought, to contract with his client for a certain percentage of the proceeds of the client's suit or action or the settlement of it, either before the institution of the action or at any stage thereafter. [Laws 1901, p. 46, Ann. Stat. Mo. 1906, sec. 4937-2.] Said statute gives an attorney a lien on the proceeds realized by a judgment or settlement, on notice to the adverse party; but in the case before us, the contract itself, by its very words, created a lien in favor of the defendant on the proceeds of the compromise.

It is taken for granted the stipulation in the contract between plaintiff and defendant, that plaintiff would accept no compromise which was not agreeable to defendant, was void because against public policy. On this assumption the invalidity of the entire contract is argued, and an authority from New York is cited as peculiarly in point on the proposition for the alleged reason that our Attorney's Lien Act was copied from a New York statute. The first section of our Act was derived from New York (Taylor v. Transit Co., 198 Mo. 715, 725); but the second section, which provides for notice of the lien to be given by the attorney to the adversary party, whereby the latter is prevented from settling the cause to the attorney's detriment, is an en-

largement of the New York statute, and goes far toward
rendering settlements impossible without the attorney's
consent, though it does not do this entirely. However,
it indicates the policy of the State is to allow an at-
torney a right in respect of settlements of causes where-
in his fee is contingent. The Snyder judgment was
not unanimous, though the judges divided on the ques-
tion of whether a term in an agreement between attor-
ney and client for contingent compensation to the for-
mer, that the litigation should not be compromised
without the attorney's consent, was against public poli-
cy and not on the question of whether, if it was, the
whole agreement would be nullified. The latter point
has been determined contrary to the New York de-
cision, and in favor of the view that such a term might
be separated from the remainder of the contract and,
therefore, will not vitiate the whole. [Potter v. Ajax
Mining Co., 22 Utah 273, 291.] The precise point has
never arisen in this State, but in Peltz v. Eichele, 62 Mo.
171, 178, the Supreme Court held a stipulation in a con-
tract for the sale of the factory, stock and good-will
of a dealer in matches, against the seller's engaging in
the manufacture of matches any where for five years,
was a divisible stipulation, and even if void, innocuous
to the other parts of the contract. That ruling is in
point. More influential is the decision given in Lip-
scomb v. Adams, 198 Mo. 530, that an agreement in
such a contract as we are dealing with, that the client
would make no compromise unless the attorney con-
sented to it, is not necessarily against public policy and
void; and that whether it will be or not, is dependent
on the particulars of the case. The court said public
policy was uncertain and fluctuating and under its
influence the law of contracts for attorney's fees had
undergone changes in modern times; that contingent
fees were once unlawful, but had come to be approved

135 App—21

as helpful to litigants, because, without them, many persons with meritorious causes could not procure attorneys; further, that an agreement restricting the right to compromise was often a protection to the client. Though the court prescribed no general rule, it distinctly held a stipulation by a litigant not to compromise without the consent of the attorneys whom she had employed on contingent compensation, was valid, and not opposed to public policy; held this, too, in view of facts no more favorable to the validity of the agreement than we have here. Therefore we will follow the case as a precedent and decide the stipulation between these parties was not invalid as a legal conclusion; and neither do the facts even tend to impeach the good faith of defendant in making it, or to prove it was adverse to plaintiff's welfare. In Taylor v. Transit Co., supra, a like stipulation was in the contract which was upheld, but nothing was said about the stipulation, it not being brought forward as in destruction of the contract.

The facts on which possibly plaintiff intended to found a charge of duress by defendant in obtaining plaintiff's signature to the instrument, though they might be sufficient, if proved, to influence a court of equity to set the instrument aside as having been induced by unfair means, fall short of showing duress. These averments, whether they savor of fraud or duress, were wholly unsupported by proof; for even the plaintiff's testimony discloses nothing in Robertson's behavior indicating a purpose to take advantage of an exigency of the case to coerce plaintiff into signing the contract. The statute authorizes attorneys and clients to enter into contracts for a contingent compensation to the attorney, either before or after a legal proceeding is instituted; but plaintiff's counsel insists, nevertheless, that an attorney can be given nothing under such a contract until he has proved affirmatively, the client was not induced to agree by fraud or improper practice which would constitute an abuse of the con-

fidential relation of the parties. Bargains between attorneys and clients, especially those where property is acquired by the attorney by gift or purchase, are jealously watched; and in such cases the attorney has been compelled, usually, to establish the bona fides of the transaction as the condition on which it would be permitted to stand. [Barrett v. Ball, 101 Mo. 288; Weeks, Attorneys (2 Ed.), sec. 273.] It may be the same rule has been applied in suits to enforce contracts not authorized by statute for contingent compensation to an attorney; though we do not recall any reported decision wherein an attorney seeking to enforce such an agreement, was held to be bound, in order to make out his case in chief, to assume the burden of proving he had not induced his client to enter into the agreement by fraud, or an abuse of confidence; unless, perchance, the sum stipulated looked like an exorbitant charge for the services alleged. We find a case of controlling authority wherein the opinion appears to take the opposite view of the law. [Thrasher v. Greene County, 105 Mo. 244.] We need not go into what the rule is when the contract is unauthorized by statute. Our statute empowers attorneys and clients to make such arrangements at any stage of litigation. To hold this statute warrants an attorney to make a contract with his client about his fee, but will not permit him to get judgment on the contract or derive any benefit from it, except on an affirmative showing that he did not procure it by fraud, would be a strange interpretation and add new clauses to the Statute. If an attorney must prove this in the first instance, he must allege it in declaring on the contract—a rule we are unwilling to countenance. As the plaintiff admitted signing the contract, it was for him to prove his averments regarding the unfair methods practiced to induce him to do so. It follows from what has been said that, as the contract was admitted, as it was not void for illegality, and as there was no evidence whatever adduced which tended to fas-

ten fraud on the defendant in connection with its execution, the court below was justified in treating it as valid, and as constituting the measure of the rights of the respective parties. Though in form this is a suit for money had and received and not one on a special contract, nevertheless a special contract having been established, the rights of the parties were to be determined in accordance with it. [Fox v. Car Co., 16 Mo. App. 122; Mansur v. Botts, 80 Mo. 651, 656.]

As the contract gave the defendant a lien on the sum collected, he may lawfully hold such portion of the sum as his fee would amount to under the contract, if he performed the obligation assumed by him; and this is conceded. But plaintiff says defendant failed to perform his duty as attorney, and broke the obligation assumed in the contract of employment, by settling the litigation with Atkinson and Locke without plaintiff's consent and contrary to his instructions. Plaintiff swore that far from authorizing the settlement, he had told Robertson to make no compromise; and if this is true, the arrangement with Atkinson and Locke could not have stood a moment against a motion filed during the term to set aside the decree or a bill in equity filed afterwards. And if plaintiff had repudiated the settlement, very likely defendant's conduct in making it, would have been cause for refusing him the compensation to which his contract entitled him for faithful performance of his duty. If plaintiff was dissatisfied, adequate remedies were available by which to retrieve his rights. [Walker v. Bolton, 53 Mo. 405; State v. Clifford, 129 Mo. 492.] He invoked none, but instead sought benefits under the settlement after he had known its terms for more than two years; as probably he had received benefits before; for an evasive reply is made to the averment of the answer that plaintiff had received an annuity under the settlement for two years. The replication said "plaintiff has never received such an annuity for seven and one-tenth

years"—*i. e.*, the entire period of plaintiff's expectance of life as stated in the answer. Whether plaintiff accepted the amount as it fell due, or did other acts of ratification, he has ratified the settlement by this action wherein he is trying to recover a portion of the proceeds. "One of the most unequivocal methods of showing a ratification of an agent's act, is the bringing of an action at law based on the act." [Mechem, Agency, sec. 151.] And ratification was implied prima facie, of an unauthorized consignment of goods for sale by an agent from the owner suing the agent for the price of the goods. [Frank v. Jenkins, 22 Ohio St. 597.] And again, the abandonment by a plaintiff of his suit, in consequence of his agent's having compromised it, was held to ratify the compromise. [Hart v. Cooper, 41 N. H. 111.] Plaintiff learned of the compromise the day it was made; and although he swore defendant referred him to his son John Beagles, for the terms of the settlement, he soon saw the writing in which the terms were set forth. His attorney had this writing at the trial of the present suit, and previously it had been in the hands of another of plaintiff's attorneys. Besides, a decree according to the stipulations was spread on the court records. Plaintiff neither does nor can assert he was left in ignorance of the terms of the compromise, as a reason why his conduct should not constitute ratification. An agent's unauthorized act if ratified, becomes as binding and effective as if done under original authority. [Semple v. Atkinson, 64 Mo. 504; Bay v. Truesdell, 92 Mo. App. 377; Clark & Skyles, Agency, sec. 149a; Mechem, Agency, sec. 167; 1 Am. and Eng. Ency. Law (2 Ed.), p. 1213.] This rule has been enforced in cases in which the precise question was whether or not a compromise of a principal's demand or cause of action, entered into by an attorney or other agent without authority, was impliedly ratified by the principal by accepting the fruits of the compromise. [Strasser v. Conklin, 54 Wis. 102;

Lowenstein v. McIntosh, 37 Barb. (N. Y.) 251; Hauss v. Niblack, 80 Ind. 407; Hoar v. Industrial Ben. Assn., 71 Hun (N. Y.) 554; Tooker v. Sloan, 30 N. J. Eq. 394; Higginbotham v. May, 90 Va. 233.] In the case first cited the court said no rule of law was more firmly established than the rule that one who, with full knowledge of the facts, accepts the avails of an unauthorized treaty made in his behalf by another, ratifies such treaty and is bound by its terms as fully as he would have been if he had negotiated it himself. The following excerpts will be found in the texts of the cited treatises. "The acceptance of a compromise by the principal is a ratification of the settlement made in his behalf and he is bound thereby." [1 Am. and Eng. Ency. Law (2 Ed.), p. 1201.] "The voluntary acceptance of the avails of a compromise made by an agent, will ratify the compromise." [Mechem, Agency, sec. 149.]

But it does not follow because plaintiff ratified the settlement that he ratified the arrangement between Robertson, Grace Beagles and Atkinson and Locke, by which Robertson was to get $1,250 and keep it for his fee. According to plaintiff's testimony he was no party to said arrangement; and Robertson's right to retain the money was a question between plaintiff and Robertson and not between Robertson, plaintiff's children and Atkinson and Locke, his adversaries in the suit. Yet plaintiff could not ratify the settlement without entitling defendant to compensation for services rendered in proportion to what was gained; for the contract of employment said that if the litigation with Atkinson and Locke was compromised, defendant was to "still have one-fourth so gained." The position of plaintiff's counsel is that, even though plaintiff accepted the benefits of the compromise, if the defendant entered into it without authority and did not protect plaintiff's interests, but sacrificed them for the benefit of his children, then defendant should be denied com-

pensation on the ground that, instead of performing his obligation as an attorney, he breached it. This contention appears to be opposed to the fundamental doctrine of the law regarding the effect of ratification of an unauthorized act; and especially its effect on the liability of the agent to the principal for the consequences of the act done without authority. As we have seen, ratification is equivalent to original author- ity; that is, it validates what would otherwise be an invalid act, and attaches to it those incidents and consequences it would have had if previously authorized. One of its consequences is to release the agent from responsibility, both to the party he dealt with and to his principal, for exceeding his powers. [Mechem, secs. 170, 171, 172; 1 Clark & Skyles, Agency, sec. 149, 11a, b, c and d, and sec. 385.] From the last cited treatise we quoted this text:

"Where an agent performs acts in excess of his authority or without any authority at all, he undertakes to do for another that which he has no authority to do and thereby incurs a liability either to third parties by reason of the unauthorized acts, or to the principal for any loss occasioned thereby. Therefore unless the agent is in some manner relieved he has put a heavy responsibility upon himself. But as we have seen that a subsequent ratification is equivalent to a prior authority, and as the agent would be relieved from all liability where he had prior authority to do an act, so if the principal with full knowledge of all facts, ratifies the agent's unauthorized acts, the latter is released from liability thereon. By such ratification the principal takes upon himself all the responsibility for the acts or contracts he has thus ratified, as he would have had had he previously authorized them; and he thereby releases the agent from all responsibility thereon, except in so far as the agent may have been responsible had the acts or contracts been previously authorized. Nor after ratification can the principal

hold the assumed agent responsible for not having performed the act in the manner he should have performed it, had he been authorized, because by the ratification he sanctions the act as done." [Clark & Skyles, Agency, sec. 149A.]

Plaintiff's counsel say ratification did not preclude plaintiff from suing for money received by defendant for plaintiff's use and point to a remark in the text work from which we have quoted, that after ratifying an agent's act, the principal may recover money received by the agent for the use of the principal. No doubt he may if the agent has no lien on it or right to retain it for an indebtedness the plaintiff owes him. But what plaintiff's counsel assert is that defendant, by acting without authority and against instructions, forfeited his right to any portion of the proceeds of the settlement. In effect, this is nothing else than an attempt to ratify what defendant did without authority, yet hold him answerable for exceeding his authority; which according to all writers on the law of agency, and all the cases we have examined, cannot be done. A controlling decision on the very point is Beall v. January, 62 Mo. 434. That plaintiff had received as a broker or commission merchant, consignments of goods to sell according to instructions given. He sold the goods and furnished statements of his doings to the defendant and on a settlement, the defendant executed promissory notes to him. The action was on these notes, and the defense was fraud in their procurement and want of consideration. The averments in the answer charged both a breach of instructions in making the sales, and fraudulent misrepresentations in reporting the same, whereby the defendant was induced to give the notes. As to these averments the opinion of the Supreme Court said, that if nothing more was alleged than selling against the defendant's orders, as the defendant had afterwards ratified the sales, the answer would state no defense

to the notes given for a balance due the agent; but as fraud in reporting the sales was charged against the broker, this was a defense. For other authorities in support of this doctrine we refer to the numerous cases cited in the notes to the text writers we have cited. Defendant cannot be held liable to plaintiff for entering, without authority, into a compromise which the defendant accepted; and he can no more be held liable by depriving him of his fee, than by a judgment for damages. On the pleadings and the evidence adduced by the plaintiff, the defendant was entitled to retain his compensation out of the money he collected and the court was right in so holding.

A serious question might arise regarding the burden of proving what sum defendant was entitled to keep as compensation—whether the burden was on him to prove the amount in his hands did not exceed what he was entitled to retain, or on the plaintiff to prove it did. This point has not been raised and we have not examined it, because the reasons for which the propriety of the lower court's ruling is assailed, relate solely to the contention that the court erred in not treating defendant's contract for compensation as presumptively fraudulent, and in refusing to impose on him the burden of showing affirmatively that no unfair means were employed to procure it.

The judgment is affirmed. All concur.