**ALPHONSO SIMMONDS, Plaintiff**

v.

**GOVERNMENT EMPLOYEES' SERVICE COMMISSION,
et al., Defendants**

Civil No. 269-1973

District Court of the Virgin Islands

Div. of St. Croix

May 15, 1974

[Page content redacted]

440

BRYANT, COSTELLO & BURKE, ESQS., Christiansted, St. Croix, V.I., *for plaintiff*

VERNE E. HODGE, Attorney General (CURTIS TARTAR, of counsel), St. Thomas, V.I., *for defendants*

YOUNG, *District Judge*

MEMORANDUM OPINION AND ORDER

This case presents interesting questions of constitutional law under the doctrine of the companion Supreme Court cases, Board of Regents v. Roth, 408 U.S. 564 (1972) and Perry v. Sindermann, 408 U.S. 593 (1972). The dispute arises from the dismissal of the plaintiff Alphonso Simmonds from his government construction job, for cause, on February 20, 1973. Thereafter plaintiff sought injunctive relief and a declaratory judgment that (1) he was entitled to a full hearing as a matter of due process; and (2) that 3 V.I.C. § 530 was unconstitutional because its provision of a dismissal hearing for "regular" but not "temporary" employees violated equal protection. Upon the Government's motion to dismiss, I upheld the reasonableness of this distinction made by § 530 but permitted plaintiff to go forward in an effort to prove an interest in his employment sufficient to invoke due process. 2 St.X. Supp. 520 (1973).

On April 4, 1974, defendant moved for summary judgment on the grounds that plaintiff had been given an administrative hearing before his dismissal that satisfied rudimentary due process. This motion was supported by an affidavit of Commissioner Harding, who alleged he had

given plaintiff an informal predismissal hearing. No decision was made on this motion, the effect of which will be discussed later, and the cause came on for an evidentiary hearing April 18, 1974. I shall proceed to discuss the several issues of law and fact raised at this hearing.

I. PROPERTY INTEREST

The evidence was undisputed that plaintiff was continuously employed by the Government from 1968 to 1973. Furthermore, although plaintiff testified that he was in doubt as to his status, the documentary evidence adduced by the defendant clearly showed that throughout this period plaintiff was classified or intended to be classified, as a "temporary" employee, or that he was employed through oversight without authorization.

In a legal analysis of this employment relationship, it must first be observed that the Roth Court rejected the subjective "expectancy" test championed by the Fifth Circuit in Ferguson v. Thomas, 430 F.2d 852 (1970). Rather, a dismissed employee must have "a legitimate claim of entitlement to [continued employment]," 408 U.S. at 577, in order to implicate due process procedural rights. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it." Id. Therefore, as a commentator has well phrased it, "a recipient's expectation or need, to qualify for due process protection, must be objectively justifiable. The Government in some manner must have indicated that the recipient could rely upon the benefit being continued absent a cause for termination." Note, 86 Harv. L. Rev. 880, 890 (1973). However, this indication of permanence may be either explicit or implicit. See id. at 891; Morrissey v. Brewer, 408 U.S. 471, 479 (1973).

Probing further, then, plaintiff's qualifications for due process safeguards, the first consideration is whether hearing rights may accrue to him merely because of the almost five-year duration of his "temporary" employment. (Plaintiff testified he was also employed by the Government between 1962 and 1966 but all records of this employment are lost and plaintiff's status then, if any, has not been satisfactorily established.) While the length of Simmonds' employment is relevant, I do not believe that, without more, it alone can create due process rights. Cf. Government of the Virgin Islands v. Santos, 2 St.X.Supp. 552, 554 (1973). Thus in Sindermann, where the plaintiff had been employed for a period of ten years under a series of short-term contracts, the Court held that, by itself, his dismissal "did not . . . amount to a showing of a loss of property." 408 U.S. at 599. Instead, the Court remanded the case for an evidentiary hearing to determine whether "existing rules or understandings" created a property interest.

Were there any "rules or understandings" which might create a property interest here? To begin with, it must be admitted that the terms of plaintiff's employment are rather ambiguous. In plaintiff's original "Certificate of Appointment," dated August 8, 1968, it is stated that his "temporary" appointment is pursuant to 3 V.I.C. § 528. However, this section appertains to "provisional," as opposed to "temporary," employees; the term of a provisional appointment is limited to six months, after which the employee must become a "regular" employee or be terminated. Mr. Leslie A. Millin, Director of Personnel, testified that the allusion to § 528 was an error, and that plaintiff should have been appointed pursuant to V.I. Rules & Regs. § 452-132. This testimony is somewhat borne out by the fact that the Certificate's term was one

year, the maximum term for temporary appointments under § 452–132.

At the expiration of this one-year period, plaintiff's "temporary" appointment was renewed, although such renewals are not specifically provided for. The renewal document termed itself an "exten[sion of] Temporary Appointment until such time as Permanent Status is authorized"; the renewal expired June 30, 1970. June 30, however, came and went and plaintiff continued unaffected on the teeming Government "pork barrel." As to this anomaly, Millin testified that plaintiff's job should have ended June 30, 1970, but that, through a clerical error which was still undiscovered at the time of dismissal 32 months later, it did not. To anyone familiar with the Virgin Islands bureaucracy this is an entirely plausible explanation. Still, plaintiff may, not without reason, complain that these errors and misstatements created in him a legitimate anticipation of a certain de facto permanency. Cf. 408 U.S. at 602.

Against such various indicia of permanency stand several salient facts. First, plaintiff never in fact achieved permanent status. Indeed, V.I. Rules & Regs. § 452–132 provides that "[n]o temporary appoint[ee] . . . shall gain regular status during the term of his temporary appointment." Furthermore, the plaintiff testified that he never made any efforts to qualify as a regular employee through the procedures in 3 V.I.C. § 521 et seq.; V.I. Rules & Regs. § 452–91 et seq. Plaintiff admits that he was never told that he was, or would become, a regular employee. Likewise, he never obtained such indications of permanency as rating reports or a probationary period, which are reserved for regular employees.

Plaintiff does point to the fact that retirement contributions were deducted from his pay during the latter stages of his employment. Technically, temporary employees are

not subject to retirement deductions, or these deductions, if made, are returned to them at the end of their temporary appointment, 3 V.I.C. § 702. I find it significant, in this regard, that at one point plaintiff asked his supervisor, Dowling, why retirement was being deducted. Although unable to explain this circumstance, by the plaintiff's own testimony, Dowling informed plaintiff categorically that his status was that of a "temporary" employee. What is more, plaintiff's retirement contributions were returned to him, pursuant to his own request, after his discharge, which is consistent with his temporary status (although perhaps a self-serving act on the part of the defendant albeit, responsive). Finally, the deduction of retirement is easily explicable as an offshoot of the prodigious clerical error through which plaintiff remained on the payroll month after month without authorization.

Additionally, plaintiff argues that the very fact that the Government gave him *some* process upon dismissal (the precise nature of which is in dispute and will be discussed later) is an admission that plaintiff was not an ordinary temporary employee, who can be dismissed summarily without cause. I doubt that any such admission was intended. My view is that the provision of some informal procedures was a result more of the serious nature of the charges against plaintiff than of any consideration of plaintiff's property interests in his employment.

In way of summary, it clearly appears that the cases for and against property rights vesting with the plaintiff through the conduct, or lack of it, of the parties are closely balanced. If I were limited to the instruction provided by Roth and Sindermann, I would indeed be faced with a quandary. Fortunately, however, I believe an answer to the question of property rights is found, or at least suggested, by traditional precepts of contract law.

Clearly, after the expiration of Simmonds' second appointment with the Government an informal contractual relationship continued to exist between the two parties. True, there were no explicit conditions of employment. However, since the employment relationship, by its nature in this case, was subject to reciprocal performances, we can read into the agreement the constructive conditions that if one party performed then the other was entitled to reciprocal performance. See L. Simpson, Contracts 320–21 (1965); Restatement of Contracts §§ 251, 267. That is, Simmonds was entitled to be paid for work he did and vice versa. Still, I do not think any term for the continuance of this implied bilateral contract can be inferred. Rather, the very fact that Simmonds had previously been a "temporary" employee, and, whatever he was, had certainly not become a "regular" employee, indicates to me an implied condition that the employment relationship was terminable at will by either party. The necessary mutual assent of the parties, as indicated by their objective acts and not by their "expectancies," can justify no more. The Virgin Islands Government could have dismissed Simmonds instanter, without cause, reasons, or hearing, and Simmonds could not then be heard to complain. Of course, since the Government pursued a different approach, i.e., dismissing Simmonds for cause, I must now go on to the question of plaintiff's interest in liberty.

## II. LIBERTY INTEREST

In his dismissal letter to plaintiff of February 20, 1972 [sic] "[e]ffective at the end of the working day February 20, 1973," Assistant Commissioner Albert M. Nelthropp stated that the reasons for the dismissal were "[w]rongful claim for four (4) days pay from the Government. One day (Feb. 6th) while you were conducting a taxi at Antilles Air Boats. Three days (Feb. 7th, 8th, and

9th) while you, by your own admission were [sic] in Puerto Rico. Insubordination and your continual practice of not complying with departmental rules and regulations." It is undisputed that these reasons for dismissal were placed upon plaintiff's permanent record.

Under Roth and Sindermann these facts raise the issue, and a not so difficult one, as to whether the stigma of these charges, without sufficient opportunity to contest them, deprived plaintiff of his due process interest in liberty. The Supreme Court has long recognized that the term "liberty" has manifold denotations including the right "to engage in any of the common occupations of life." Meyer v. Nebraska, 262 U.S. 390, 399 (1923). More recently, in Wisconsin v. Constantineau, 400 U.S. 433, 437 (1972) the Court stated that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Accord, e.g., Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123 (1951); Richards v. Christian, 3 St.X.Supp. — (February 8, 1974).

To be sure, in the Roth case, the Supreme Court laid some emphasis on the fact that the state had not explicitly foreclosed other job opportunities with it to the plaintiff. 408 U.S. at 573–74. The Court rejected the view of the district court that mere dismissal constituted sufficient stigma to implicate due process interests. 310 F.Supp. at 979. In the instant case, the evidence conflicted as to whether plaintiff was effectively foreclosed from seeking other governmental employment. I do not believe that I need resolve this conflict. The *reasons* for dismissal are undisputed, and it is the effect of *these* that I must weigh. Thus in Roth, at 573, the Court observed that "[t]he State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his

standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. *Had it done so this would be a different case.*" [Emphasis supplied.]

Therefore, the issue still to be decided is whether the charges against plaintiff—that he was conducting his personal affairs on government time—are serious enough to require a right to a hearing before plaintiff becomes permanently besmirched thereby. To begin with, it might be contended that, while the charges allege a conduct amounting to dishonesty, in the Virgin Islands such allegations may not be considered unusual nor viewed with great concern. The prototypal territorial government worker is not noted for a strict attention to the public weal. However, I do not believe that persons concerned with the Virgin Islands' business and employee morality would countenance such employment truancy, if indeed Mr. Nelthropp's accusations against plaintiff are true. On the other hand, if those charges are not true, then plaintiff's employment record should not be pinned with that "badge of infamy or disloyalty," Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 898 (1961), for which the Supreme Court early prescribed curative hearings. E.g., Wieman v. Updegraff, 344 U.S. 183 (1952); Joint Anti-Fascist Comm. v. McGrath, 341 U.S. 123 (1951). Too, I believe that a certain expansion in the parameters of protected "liberty" has lately occurred and has been made possible by the simpler and more administrable rudimentary due process procedures which the Supreme Court has evolved to replace the more cumbersome trial-type hearing approach. Cf., e.g., Morrissey v. Brewer, 408 U.S. 471 (1972). In Richards, supra, I recognized that a "cloud" could arise from long unresolved

charges of violations of departmental rules and regulations, so as to invoke due process.

On even more serious charges, as in this case, I must reach the same conclusion. Thus, plaintiff is entitled to a hearing at which he will have an opportunity to contest the charges against him. Needless to say, the question of reinstatement will not arise. "The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons." 408 U.S. at 573, n. 12. Indeed, in the instant case it is hard to see how plaintiff could be "reinstated," since he had no "status" to begin with, his employment being a clerical error, now, by chance, corrected. But perhaps, if the Government discovers that Simmonds was wrongfully charged, it may wish to employ him on some authorized basis.

III. PROCEDURE

Having determined that due process is implicated, "the question remains what process is due?" Morrissey v. Brewer, 408 U.S. 471, 481 (1972). The difficulties inherent in this inquiry can well be seen in the recent Supreme Court decision in Arnett v. Kennedy, 42 U.S.L.W. 4513 (U.S. April 16, 1974). The issue of appropriate procedures for the dismissal of a nonprobationary federal civil service employee there evoked no fewer than five opinions from the Justices, the dubious guidance of which will be discussed subsequently.

In the case before me, two distinct issues appear. First, did the procedures conducted by Commissioner Harding satisfy due process requirements? Secondly, what procedural steps may now be taken to give the plaintiff additional process protections?

There is a sharp factual conflict as to what procedures were conducted prior to dismissal. Commissioner Harding's affidavit alleges that he reviewed the charges against plaintiff, and gave plaintiff an oral opportunity to rebut the charges, accompanied by a lawyer (although he does not allege the notice, if any, of this hearing given to plaintiff). Under oath, plaintiff denied that any such hearing occurred. But he does not dispute that he received a written list of reasons in his letter of dismissal.

At least one court has held that supplying a list of reasons is sufficient prior process to justify an employee's dismissal. Drown v. Portsmouth School Dist., 435 F.2d 1182 (1st Cir. 1971) (nontenured teacher). However, the more prevalent view of federal courts has been to accord pretermination procedures similar to those approved for welfare recipients in Goldberg v. Kelly, 397 U.S. 271 (1970), to wit, notice that is adequate to allow time to prepare; reasons in advance of hearing so that they may be rebutted; an effective opportunity to defend, including cross-examination and confrontation of adverse witnesses; retained counsel, if desired; informal decision giving reasons; and an impartial, although not necessarily uninvolved, decision maker. Accord, e.g., Roth v. Board of Regents, 310 F.Supp. 972 (W.D. Wis. 1970), rev'd on other grounds, 408 U.S. 564 (1972). The Kennedy court split badly on the question of the applicability of Goldberg-type procedures (and procedural analysis) to employee dismissals. 42 U.S.L.W. at 4519, 4523, 4526–27, 4531, 4538, 4541, 4542. If these requirements were applied, I would not have to decide the conflict of testimony, since the Government's proof has failed as to the adequacy of notice of the hearing and reasons therefore.

There is especial doubt, however, as to the appropriateness of Goldberg procedures in situations where only "liberty" interests are involved. For example, in Kennedy,

the plurality opinion of three Justices stated that when "the purpose of [a] hearing . . . is to provide a person 'an opportunity to clear his name' a hearing afforded by administrative appeal procedures after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause." 42 U.S.L.W. at 4520. [Emphasis supplied.] The authority of the plurality opinion is rather dubious, since none of the other six Justices, who concurred and/or dissented in varying degrees, appeared to agree with the underpinning rationale of the plurality result. Furthermore, in the present case there was no explicit provision for subsequent administrative appeal (unlike "regular" employees who may appeal to the Government Employees' Service Commission), so the question of "prior" process begs the issue of what process is due.

Still, the *holding* in Kennedy may by itself somewhat undermine the application to dismissal hearings of the Goldberg approach to rudimentary due process hearings. In Kennedy, for whatever reasons, the Court did uphold dismissal procedures which omitted any right to an *oral* hearing and did not require an impartial decision maker. 42 U.S.L.W. at 4515, 4519, n. 21. But again, the impact of this approval, given the substantial differences among the Justices, is unclear. Too, the decision in no way appears to affect the Goldberg standards of notice, which the Government has failed to prove in this case.

Suffice it to say, then, that there are severe doubts as to the adequacy of administrative dismissal procedures for allowing plaintiff a reasonable opportunity to clear his name. I do not believe that these doubts will have to be finally resolved if, upon further inquiry, this Court finds that there exist suitable avenues for an additional post-termination name-clearing hearing. To be sure, the adequacy of the pretermination procedures would have to be decided if a claim for back wages was involved. But no

such claim is now pending in the case and, indeed, such a claim would probably not be cognizable under my negative resolution of plaintiff's contention that he possessed a property interest in continued employment. Although I need not decide the issue now, I believe that back wages are not awardable for denials of *prior* process with regard to liberty interests, if indeed, under Kennedy, prior process is even required to vindicate liberty interests. Furthermore, I believe, and as an Article I Court may decide, although the issue is not before me, that the administrative prior process given plaintiff was sufficient to choke off a back pay claim on either a liberty or property interest rationale.

I will now address myself to the question of what procedures for redress remain to plaintiff. Plaintiff's attorney viewed the purpose of the evidentiary hearing in this case to be to determine if plaintiff was entitled to an administrative hearing before the Government Employees' Service Commission. The Government countered with the argument that the jurisdiction of the GESC is restricted under 3 V.I.C. § 530 to "regular" employees and cannot be extended except by the legislature. I agree and, indeed, would be loath to expand the jurisdiction of a body which has experienced great difficulty in handling its present case load. Rather, the Government contended that plaintiff should have proceeded to seek a Writ of Review from Commissioner Harding's decision pursuant to 5 V.I.C. § 1421 et seq., see Richards v. Christian, 2 St.X.Supp. 521 (1973). I agree with the Government that this probably would have been the best procedure. Yet I also agree with plaintiff's rejoinder that it little matters by what precise path he reached this Court. It would not be fair to the plaintiff to require him to charter an unchaste legal morass by the shortest possible route. I believe it is within the Court's discretion to treat the case, as it now stands, in

the nature of a petition for a Writ of Review. I also believe it will be more expeditious if this Court undertakes—in this case only and without expanding the general scope of review of administrative decisions—a substantive review of the correctness of the reasons for plaintiff's dismissal rather than remand the case to Commissioner Harding for more complete administrative procedures. I do not believe that plaintiff could get a fair rehearing now, given the fact the plaintiff has implicitly accused Harding of swearing falsely, and vice versa, a conflict which I fortunately need not resolve. Therefore, a remand would not, in the Court's opinion, be in the interests of justice.

A day for hearing will be set down at which plaintiff will have full opportunity to rebut the aspersions on his honesty cast by the charges against him. If these charges are not proved by the Government by a preponderance of the evidence at this hearing, the Court will order the reasons for dismissal eradicated from plaintiff's employment records and issue a final judgment clearing the plaintiff of the allegations made against him.

FINDINGS OF FACT

(1) Plaintiff was continuously employed by the Government from 1968 to 1973;

(2) During this period plaintiff was classified "temporary" or not classified at all;

(3) Plaintiff was originally appointed as a "temporary" employee for a one-year period beginning August 8, 1968;

(4) By a clerical error, this appointment referred to 5 V.I.C. § 528, which appertains to "provisional" employees;

(5) Plaintiff was reappointed in 1969 as a "temporary" appointment terminable June 30, 1970;

(6) By a clerical error, plaintiff was continued on the payroll after June 30, 1970, without authorization;

(7) Thereafter, plaintiff was told by his supervisor that he remained a "temporary" employee;

(8) Plaintiff made no efforts to obtain "regular" status;

(9) Plaintiff was never told he had obtained "regular" status;

(10) Plaintiff was dismissed by letter of February 20, 1973 for cause;

(11) This letter advised plaintiff that the reasons for his dismissal were dishonesty in claiming wages for time spent on his personal affairs, and repeated noncompliance with rules and regulations; and

(12) These reasons have been incorporated into plaintiff's permanent personnel record.

## CONCLUSIONS OF LAW

(1) Plaintiff had no property interest in continued employment so as to implicate due process;

(2) The charges against plaintiff besmirched his character and cast a cloud over his freedom to seek future employment, injuring his interest in liberty, and implicating due process;

(3) This Court has discretion to treat plaintiff's case in the nature of a Writ of Review and to accord him a full hearing to allow him to vindicate himself as to the charges against him; and

(4) Since this hearing will completely satisfy plaintiff's process interests, the adequacy of administrative procedures and minimum due process standards need not be decided in this case.

## ORDER

It is hereby ORDERED, on the premises considered, and in conformance with the above Opinion, that defend-

ant's Motion of April 4, 1974, for summary judgment or to dismiss, should be, and is, DENIED; and it is further

ORDERED, on the premises considered, and in conformance with the above Opinion, that an evidentiary hearing will be set for a day certain upon application of plaintiff; said hearing will be held solely to determine the validity of the charges against plaintiff. In the event that plaintiff makes no application for such hearing within twenty days from the date hereof, the complaint herein will be dismissed.