### ALDA MONSANTO, Plaintiff

v.

### V.I. HOUSING AUTHORITY, JUAN CENTENO, et al., Defendants

Civil No. 708/1980

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

January 8, 1982

---

GEORGE M. MILLER, ESQ., St. Thomas, V.I., *for plaintiff*

RICHARD E. DALEY, ESQ. (ISHERWOOD, BARNARD & DIEHM), Christiansted, St. Croix, V.I., *for defendants*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION AND ORDER

The Virgin Islands Legislature declared in 1976 that Government decision-making shall operate in the light of the sun by enacting the Government in the Sunshine Act. 1 V.I.C. §§ 251–256 (1980 Supp.). This case requires the court to determine what, if any, rights the Act creates for an individual who was fired as a result of a government agency meeting held in violation of the Act. The Court also must determine whether the firing, in violation of the agency's own by-laws, makes the termination invalid and, if so, whether the agency may retroactively cure the invalidity.

Alda Monsanto, plaintiff, was appointed in 1971 as Executive Director of the Virgin Islands Housing Authority (hereinafter the "Authority") and served in that position until the Board of Commissioners of the Authority on July 25, 1980, terminated her employ-

ment. That termination was challenged by Monsanto. As a result, the Board on October 8, 1980, again terminated her employment as Executive Director of the Authority. Challenging these actions, Monsanto sued the Authority and Juan Centeno, Chairman of the Authority's Board of Commissioners, seeking an order declaring both the July and October terminations invalid and requesting reinstatement, back pay, and damages.

The proceedings to oust Monsanto had their genesis in a July 21, 1980, notice of a special meeting issued by Centeno. The notice made no reference to Monsanto or her employment. The special meeting convened at noon on July 25 at the Authority's offices in Christiansted, St. Croix. Monsanto was present and the meeting was open to the public. Centeno moved through the items on the agenda, which included a discussion of letters written by tenants of the Authority. When a letter that demanded the termination of Monsanto's employment was brought up, Centeno stated, "An item such as this I do believe should require our going into executive session and discussing it ourselves."[1] The board then went into executive session behind closed doors.

When the board reconvened in open session, Centeno asked whether the board should vote by secret or open ballot on the issue of terminating Monsanto's employment. The consensus was for a secret ballot. Balloting then took place, with four members voting "no confidence" and one member abstaining. Centeno then said, "The Board has voted that they have no confidence in Mrs. Monsanto and your continuing as Executive Director of the Authority, meaning that we will be relieving you of your position effective immediately."[2] A letter dated July 25, 1980, was drafted and delivered to Monsanto terminating her employment "effective immediately." On July 31, 1980, Monsanto filed suit to enjoin the board from effectuating her termination.[3]

---

[1] Plaintiff's Exhibit 2, Minutes of Special Meeting of Virgin Islands Housing Authority of July 25, 1980, p. 49.

[2] Id. at p. 52.

[3] A temporary restraining order was denied, but a default was entered on August 25, 1980, against the defendants for failing to file a responsive pleading, notice of appearance, or answer. On August 26, 1980, a Notice of Appearance, Answer and Motion to Vacate the Entry of Default were filed. A hearing on the motion was conducted on September 19, 1980. At the request of counsel, no action was taken on the motion to vacate because of the desire of the parties to attempt to work out a settlement. No settlement having been reached, papers were subsequently filed and the court, by order dated November 3, 1980, vacated the default. Discovery then took place and trial was conducted on April 10, 1981, at the conclusion of

The actions of the board, Monsanto's suit, and the failure of the parties to resolve their differences apparently caused Centeno, on October 7, 1980, to call another special meeting on October 8, 1980. The call for the meeting specifically stated that the meeting was for: "1. Ratification of action taken by the Board of Commissioners on July 25, 1980, relating to the termination of the Executive Director." In accordance with the by-laws, a meeting was duly convened and, as at the July 25 meeting, the October 8 meeting of the board of the Authority initially was open to the public. The board, again, though, went into executive session without voting to close the meeting.[3A] After the executive session, the board reconvened in open session and passed a resolution terminating Monsanto's employment effective July 25, 1980.

## Violation of By-Laws and Subsequent Ratification

Certain actions of the Board before and at the July 25 meeting violated the Authority's by-laws. Article III, Section 3, regarding special meetings requires that the call of a special meeting state the purpose of transacting any business. The call for the July 25 meeting did not state that the board was to consider termination of Monsanto's employment, yet the board did just that.

■ The defendants, however, contend that the reference in the call to discussion of correspondence gave the plaintiff notice that the question of her employment status would be discussed and voted upon at the meeting.[4] It stretches credibility, though, to believe that the plaintiff was put on notice that her status as Executive Director of the Authority would be considered at the meeting.[5]

■ Even assuming arguendo that Monsanto had notice, there

---

which the parties were given 40 days in which to file briefs and 15 days to file a response. Since that time, the court also has been endeavoring, unsuccessfully, to obtain the legislative history of the Sunshine Act. The President of the Virgin Islands Legislature, the Honorable Ruby M. Rouss, advised the court by letter dated December 22, 1981, that there are no transcripts of the debate on the Act and that a search revealed no untranscribed tapes either.

[3A] Transcript of minutes of special meeting of V.I. Housing Authority of October 8, 1980, bearing initials of counsel, p. 15.

[4] The only possible reference would be Item 5 of the Agenda, "Discussion of correspondence from residents and resident organizations," of which some of this correspondence demanded the removal of Mrs. Monsanto. Plaintiff's Exhibit 1.

[5] The court notes that the question of Mrs. Monsanto's tenure with the Authority is not a question of first impression. The Board as long ago as September 5, 1974, requested her resignation. V.I. Op.A.G. 358 (1974).

is no dispute that the manner of voting by secret ballot violated the Authority's by-laws. Article III, Section 6, provides: "Voting on all questions coming before the authority shall be by roll-call and the yeas and nays shall be entered upon the minutes of such meetings."

■■ The board's second effort at the October 8, 1980, meeting, though, was in complete accord with the by-laws, but Monsanto contends that the board cannot retroactively correct the defects of the July meeting. This position is contrary to the generally accepted rule that ratification is equivalent to original authority; it validates what would otherwise be an invalid act. Beagles v. Robertson, 135 Mo. App. 306, 115 S.W. 1042 (St. Louis, Ct. App. 1908). Thus, after ratification, an otherwise invalid act stands as a valid one, and the law is well settled that a municipal corporation may ratify a voidable resolution by subsequent validation, except in the limited occasion where the original action was ultra vires. Mateer v. Swissvale Borough, 335 Pa. 345, 8 A.2d 167 (S.Ct. 1939). A state or one of its agencies has the same power. Butler v. Hatfield, 277 Minn. 314, 152 N.W.2d 484 (Minn. 1967).[6]

■■ The Authority has almost unbridled discretion when it comes to hiring or firing the Executive Director of the Authority. Under Virgin Islands law, the Executive Director, and thus Monsanto, serves at the pleasure of the Board of Commissioners. 29 V.I.C. § 33(a) (1975); 7 V.I.Op.A.G. 358 (1974). Consequently, the Authority possesses the power to terminate Monsanto's employment so long as the termination was not in violation of any constitutionally protected right. Hodgin v. Noland, 435 F.2d 859 (4th Cir. 1970). Accordingly, the board possessed the power to ratify its decision to terminate Monsanto's employment, and whatever defects with respect to the by-laws that occurred at the July meeting were corrected at the October meeting.

---

[6] The court need not decide the exact nature of the Authority, which is a "public body corporate and politic of the Virgin Islands within the Department of Housing and Community Renewal for administrative purposes only" as well as a " 'public housing agency' within the meaning of the United States Housing Act of 1937, as amended, and a 'local public agency' within the meaning of Title I of the Housing Act of 1949, as amended." 29 V.I.C. § 31(a) (1975). Housing authorities have been held to be a political subdivision of a state, Jones v. Middlesex County Board of Elections, 259 F.Supp. 931 (D.N.J. 1966); an agency of a city, Cuyahoga Metropolitan Housing Authority v. City of Cleveland, 342 F.Supp. 250 (N.D. Ohio 1972), aff'd 474 F.2d 1102 (6th Cir. 1977); as well as a state agency and not a "municipal corporation." Wilmington Housing Authority v. Williamson, 228 A.2d 782 (Super. Ct. Del. 1967). Thus, the rule with respect to ratification is applicable to the Authority.

*The Sunshine Act and Alleged Violations*

Monsanto also asserts that the board violated the Sunshine Act at both the July and October meetings. The court first will examine the applicability of the provisions of the Sunshine Act to the July and October meetings, and then will determine whether the board violated the Act.

The Virgin Islands Government in the Sunshine Act provides that "all meetings of a governmental agency or of a subdivision thereof authorized to take action on behalf of the agency shall be open to the public." 1 V.I.C. § 254(a) (Supp. 1980). The Act is designed to provide the public with complete information regarding the decision-making processes of government. Id. § 252.

■ Under the Act, a meeting is defined as "the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations concern the conduct or disposition of official agency business." Id. § 253(c). Neither of the parties contends that the Sunshine Act does not apply to the July or October meetings, and the court thus holds that the Sunshine Act is applicable to both meetings.[7]

Not all meetings of the Authority, however, are required to be open to the public. In limited circumstances, the Authority may close its meetings. If the agency finds that public interest requires a closed meeting, it may vote to close the meeting. Id. § 254(b) and (c). This exception applies particularly when discussions at the meeting involve information of a "personal nature where disclosure would constitute a clearly unwarranted invasion of personal privacy." Id. § 254(b)(1). However, before an agency may close a meeting, a majority of the entire membership must vote to close such a meeting. Id. § 254(c)(1).

Monsanto argues that the board did not vote as required by the Sunshine Act to close either of the meetings. While the board may have had the right to close the meetings under 1 V.I.C. § 254(b) and (c),[8] it was required to vote, have each member's vote recorded, and have available a record for the public. Id. § 254(c). From a review of the minutes of the July and October meetings, it is clear that the

---

[7] Any doubt that the Sunshine Act applies to the Housing Authority, Virgin Islands Press Association v. Juan Luis, Civil No. 70-137 (D.V.I., Div. St. T. & St. J., January 21, 1980), was eliminated by Act No. 4407, § 2(e), approved February 14, 1980, which amended 29 V.I.C. § 187 to make the Sunshine Act specifically applicable to the Housing Authority.

[8] The court expresses no opinion as to whether the meeting, in fact, could legally have been closed under the Sunshine Act.

board did not properly vote to close either meeting. The court must therefore hold that the board violated the Sunshine Act.

### Remedies for Violation of the Sunshine Act

■ Having determined that the board violated the Sunshine Act, the court must determine what, if any, remedies are available to Monsanto. The Act explicitly authorizes this court to grant declaratory and injunctive relief to enforce its provisions, and to declare invalid any agency action that is contrary to the Act. Id. § 254(h). As a result, Monsanto asks the court to declare invalid the board's termination of her employment because the Act provides that "no resolution, rule, regulation, ordinance, or formal action of any agency shall be valid unless taken or made at a meeting that meets the requirements of this section." Id. Because the board violated the Sunshine Act by not taking a recorded vote before closing each meeting, the court must declare invalid the board's action to terminate Monsanto's employment.

Having found that the Authority's action to terminate Monsanto's employment was invalid, the court now must determine what relief, if any, to grant Monsanto. As pointed out, the Act gives this court the power to grant declaratory and injunctive relief. Monsanto asserts that she also is entitled to damages. The Act, however, is silent as to whether an individual possesses such a private right of action.

■ Despite the absence of an express provision of a private cause of action for damages, a court under certain circumstances may find such a remedy is implicit. In Cort v. Ash, 422 U.S. 66 (1975), the United States Supreme Court articulated four essential factors that a court must consider to determine whether a congressional statute contains an implied private cause of action:

> First, is the plaintiff one of the class for whose special benefit the statute was enacted? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?

120

Id. at 78.[9] Since Cort, however, the Supreme Court has stated that the four factors are not "entitled to equal weight." Touche Ross and Co. v. Redington, 442 U.S. 560 (1979). Indeed, the court now requires persuasive evidence of a legislative intent to create such a cause of action. If no such evidence exists, a court must be leery in reading such a remedy into the statute, particularly where the statute expressly provides another remedy. Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11 (1979).

Legislative history of the Virgin Islands Sunshine Act, unfortunately, is scarce and a transcript of the debates remains unavailable.[10] We do know, nevertheless, that the Virgin Islands law was based largely upon the federal Government in the Sunshine Act, 5 U.S.C. § 552b (1977). It, too, is silent as to whether a private cause of action may be maintained, and the court has been unable to find any reported case that even discusses the issue. Unlike the local law, though, the federal law specifically denies to a federal court the authority "to set aside, enjoin, or invalidate any agency action (other than an action to close a meeting or to withhold information under this section) taken or discussed at any agency meeting out of which the violation of this section arose." 5 U.S.C. § 552b(h)(2).

The legislative history of the federal act gives some insight into what remedies the drafters considered as available to an individual citizen. The one remedy that is continually mentioned is that of equitable relief—to enjoin future violations of the act and to order the agency to make public a transcript of any improperly closed meeting.[11] H.R. Rep. No. 94-880, 94th Cong. 2nd Sess. (1976), reprinted in 1976 U.S. Code Cong. & Ad. News, 2183-2225. No mention is made anywhere of a private cause of action.

In some respects, the Virgin Islands Sunshine Act is similar to the Investment Advisors Act of 1940, 15 U.S.C. § 80b-1 et seq., discussed in Transamerica Mortgage Advisors, Inc. v. Lewis, supra. In that act, as in the Sunshine Act, Congress provided that certain contracts in violation of the act could be declared void and that certain viola-

---

[9] State courts have incorporated Cort's four factors into the determination of whether a state statute implies a private cause of action, e.g., Lock v. Shreppler, 426 A.2d 856 (Super. Ct. Del. 1981); City of Tucson v. Superior Court of Pima County, Arizona, 619 P.2d 33 (1980).

[10] See note 3, supra.

[11] A similar provision for ordering an agency to make a public transcript of any improperly closed meeting is not included in the Virgin Islands law. It should be noted, though, that there is no transcript of the discussion at the closed portion of the July meeting with respect to Monsanto's termination.

tions of the act are criminal offenses. There, the court concluded that there was no private right of action and found "it highly improbable that Congress absentmindedly forgot to mention an intended private action. Cannon v. University of Chicago, 441 U.S. 677 at 742 (Powell, J., dissenting)." Transamerica Mortgage Advisors, Inc. v. Lewis, supra, 444 U.S. at 20.

■ Thus, nowhere in either the Virgin Islands or the federal Sunshine Acts or the legislative histories that are available is there any mention of the creation of a private cause of action for damages. Absent some express intent to create a private cause of action and given the fact that the purpose of the Act was to benefit the general public as a whole, and, indirectly, the press, as opposed to an individual citizen, the court believes it would be engaging in judicial legislation to hold that such a right was created by the Act.[12] The court, therefore, will not imply a private remedy.

### Back Pay and Reinstatement

Finally, Monsanto asks this court to grant her back pay and to order her reinstated as Executive Director. The court, however, also is of the opinion that Monsanto has no legal basis for either of these requests.

■ Where a termination of employment wrongfully infringes upon an individual's property interest, the employee may be entitled to recover damages for lost wages. The employee's property interest, however, is based on a claim of entitlement to continued employment. Board of Regents v. Roth, 408 U.S. 563 (1972); Government of the Virgin Islands v. Anderson, 434 F.Supp. 1204 (D.V.I. 1977); Simmonds v. Government Employees Service Commission, 10 V.I. 439, 375 F.Supp. 934 (D.V.I. 1974). Monsanto has made no claim that the Authority's actions amounted to an unconstitutional taking of property without due process.

■ Even assuming that Monsanto claimed an infringement of a property interest, she still could not prevail. In order to maintain a claim for back pay under the due process clause, an individual first must establish a property interest in his or her employment. Anderson, supra. Since Monsanto served at the pleasure of the Board of Commissioners of the Authority, her employment was far from permanent. As a result, Monsanto did not possess a property interest protected by procedural due process. Moreover, she did not

---

[12] See explanation to Bill 6792, Eleventh Legislature of the Virgin Islands (1976).

122

even possess a property interest sufficient to require a hearing before her termination. See Roth, supra. Accordingly, because the Authority was empowered to terminate Monsanto's employment and because Monsanto did not have a property interest in her continued employment, the court will not order her reinstated as Executive Director or grant her back pay.

*Conclusion*

The Board of Commissioners of the Virgin Islands Housing Authority possessed the power to terminate Monsanto's employment as Executive Director, but the board was obligated to follow its by-laws and the laws of the Virgin Islands regarding that termination. The Sunshine Act specifically requires governmental agency meetings to be open to the public, except under certain circumstances. Before the board closed the July and October meetings, it was required to conduct a vote of the members present. It did not. The resolutions of both meetings are, therefore, invalid.

The Sunshine Act, however, neither grants Monsanto a cause of action for damages because of the board's violation of the Act, nor does it authorize the court to order her reinstated. Furthermore, Monsanto did not possess a constitutionally protected property interest in her continued employment to enable her to receive back pay or to be reinstated. Since the Board has the power to terminate Monsanto's employment, it will be given sixty days to take whatever action it deems appropriate. Failure to act in compliance with the law will result in the court issuing an order declaring that Monsanto has not been terminated as Executive Director and finding that she still holds office with all the entitlements thereto as of July 25, 1980. Accordingly, it is

ORDERED that the actions by which the Virgin Islands Housing Authority attempted to terminate Monsanto's employment as Executive Director be and hereby are declared to be null and void, and it is further

ORDERED that the Virgin Islands Housing Authority shall have sixty days to take action consistent with the views expressed herein.